## ELLEN M. CARTER'S APPEAL FROM PROBATE.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

*E* made an ante-nuptial contract with *C*, whom she was about to marry, by which it was agreed that *C* should relinquish all claim that he might have by virtue of the marriage to the property of *E*, and give her within one year after the marriage ten thousand dollars and at his death the use for life of twenty-five thousand dollars, and to place property in the hands of a trustee for security; this provision to be a jointure and a bar of all her claim for dower in his estate; *E* accepting the gifts and relinquishing all claim that she might have for dower. Held that the contract was not a jointure.

Whether it was such a settlement of property in her favor as to bar her dower in her husband's estate under Gen. Statutes, § 622:—*Quære.*

If it was not so, yet it was a contract by the terms of which, in consideration of the promises made to her therein, she relinquished all claim that she might have for dower in the estate of *C*. She could not have what was given her by the contract and dower in addition.

*C* died deeply insolvent. At the time of his death the $10,000 mentioned in the agreement had been but partly paid and no property had been placed in the hands of the trustee to secure the life use of the $25,000. After his death, with full knowledge of the insolvency of his estate and of the amount of the real estate, she had presented to the commissioners a claim for the worth of her life interest in the sum of $25,000, and had been allowed $18,690. She had taken legal advice as to the effect of the contract on her right to dower, and was informed that she had no such right and that her only way was to present this claim against the estate, and she acted in that belief. The settlement of the estate was proceeded with from that time on the theory that she was a creditor and not a doweress. She received dividends on the amount allowed

her, in common with other creditors, which she had never offered to repay. These dividends were very small. Fourteen years after the death of her husband she for the first time claimed to be entitled to dower. Held that if the contract was not to be regarded as barring her right to dower, she had made her election to take what was given her by it instead of dower.

Courts of probate do not have any general equity jurisdiction. But where an estate is in settlement before a court of probate, and an equity arises between persons interested in such estate, incidental to and growing out of such interest, then that court not only may but must apply and enforce the equity in order to do justice to all parties and to settle the estate. To this extent courts of probate have the fullest equity powers.

[Argued October 9th—decided December 15th, 1890.]

APPEAL from a decree of a probate court refusing to set out dower to the appellant in the real estate of Newton Carter, her late husband; taken to the Superior Court in Hartford County.   The following facts were found by a referee :—

The appellant and the said Newton Carter intermarried on the 23d day of September, 1871.   Previous to the marriage and on the same day the parties entered into the following ante-nuptial agreement :—

"Whereas, a marriage is shortly intended to be had and solemnized between Newton Carter and Ellen M. Minor, and upon the treaty of said marriage between the said parties it was agreed by them that the said Carter should give up and relinquish all claims that he might derive by virtue of said marriage in the property of said Ellen, and would give to her within one year after said marriage for her own use and in fee forever the sum of ten thousand dollars, and secure to her the use, income and profits of twenty-five thousand dollars more from the date of the decease of said Carter, for and during the natural life of the said Ellen, as a jointure, and as a bar of all her claims for dower in the estate of the said Carter ;—

"Now, this indenture witnesseth that the said Carter, in consideration of the said intended marriage, and of the premises, and in consideration of one dollar to him paid by the said Ellen M. Minor, and by and with the approbation of the said Ellen, testified by her signing and sealing these

presents, do bargain, sell and assign to the said Erastus Smith, and to such person or persons as may hereafter be appointed in his place as hereinafter provided, the sum of thirty-five thousand dollars out of my property and estate, to have and to hold the same upon the trust and to the intent and purpose that he, the said Smith, or his successor, acting as trustee or trustees, shall within one year after the marriage between the said Carter and the said Ellen, collect and receive from the said Carter and pay over to the said Ellen or for her benefit the sum of ten thousand dollars (unless the said Carter within the time aforesaid shall have paid the same), as her own and individual estate ; and shall, after the death of said Carter, collect and receive from and out of said Carter's estate, and there shall be set out to said trustee from said Carter's estate, the further sum of twenty-five thousand dollars, to be invested by the said Smith, or his successor or successors, trustee or trustees, as aforesaid, in bank stocks or public securities, or loaned on good security, or in such manner as said trustee or trustees shall judge best, and to receive from time to time and pay over the net dividends, income and profits thereof to the said Ellen from the time of the death of the said Carter, for and during the natural life of the said Ellen; which payments aforesaid shall be in lieu of and in full satisfaction of all claims for dower in the real and personal and in all the estate of the said Carter, unless the same shall hereafter be given to her by the last will of the said Carter, or otherwise in writing ; and on the death of the said Ellen said trustee or trustees shall re-convey said principal sum of twenty-five thousand dollars to such person or persons as shall be entitled to receive the same, together with all interest, income and profits that may accrue after the death of said Ellen, subject to such reasonable deduction for the services of said trustee or trustees as shall be allowed by the judge of the probate court for the district of Hartford.

" It is hereby provided, in case the said Smith or any successor shall die or refuse to act, that then the judge of probate for the district of Hartford shall appoint some proper

person or persons to act as trustee or trustees in the place of said Smith or other trustee, with all the powers vested hereby in said Smith to act in the premises.

"In witness whereof the parties have hereto set their hands and seals the day and year first above mentioned, the said Ellen accepting the gifts as aforesaid, and hereby relinquishing and discharging all claim she may or might ever have for dower in the estate of said Newton Carter."

The contract was signed and sealed by the said Newton Carter, the said Ellen M. Minor, (now the appellant,) and the said Erastus Smith, trustee.

The parties lived together as husband and wife till the decease of Carter in 1875.

Carter paid the appellant the $10,000 described in the agreement after the marriage, qualified as follows:—$4,000 of the amount was paid by the substitution of his note to the Connecticut River Bank in the place of one given by the appellant of a like amount to the bank previous to the marriage. The substituted note was at the time agreed to be received in payment of its amount. The appellant's note was secured by fifteen hundred dollars worth of water bonds, and by three thousand dollars worth of Connecticut Western Railroad Company's bonds. These bonds were, at the time, of par value. The bank kept the appellant's bonds as collateral security for Carter's note, and they were never returned to her. The water bonds became payable, and the amount thereof was paid to the bank and indorsed on the note. The Connecticut Western Railroad Company's bonds were changed into the stock of the road, which is still held by the bank, and is now worth thirty-one dollars per share. The note was presented by the bank against Carter's estate and was allowed by the commissioners. Carter, during his life, never paid anything on the note. The appellant loaned Carter, at various times, divers sums of money, amounting in all to $4,816, which was never paid to her by him. The moneys so loaned were not the moneys of the appellant personally, but were held by her as guardian.

Carter died, leaving a will, but no provision was made

therein for the benefit of the appellant. He died greatly insolvent. His estate was so represented by his executor, and commissioners were appointed thereon.

The appellant presented to the commissioners, among other claims, one for $4,500, the value of the bonds; likewise a claim for $4,816 loaned to her husband. These claims were allowed by the commissioners, and she received dividends thereon.

No part of the $25,000 mentioned in the ante-nuptial agreement ever went into the hands of the appellant's trustee, Horace Cornwall, who became trustee under the agreement on the refusal of Erastus Smith to act as trustee; neither did anything come into the hands of Mr. Smith before his declination; neither has the appellant received any benefit growing out of said sum, except certain dividends on the same, as is hereinafter stated.

The appellant was told by her trustee, Mr. Cornwall, who was also the attorney of the executor of Mr. Carter, that the ante-nuptial agreement destroyed her right to dower in her husband's estate; and that her only course was to have the cash value of her interest in the $25,000 determined by an actuary, and then present that amount to the commissioners for a dividend in common with other unsecured creditors. She requested her trustee to take legal advice on the subject, and he afterwards informed her that he had consulted counsel, and that they agreed with him that she had no right to dower; and that her only course was to present the claim as stated.

The referee finds that the appellant believed what was said to her by her trustee on this subject; and she continued in such belief, and was never informed or knew the contrary till some time in the month of November, 1888, when she soon after instituted these proceedings. Whatever the appellant did in the meantime was done in consequence of such belief, for she had no doubt on the subject.

She was forty-two years of age on the first day of April, 1876.

She had the cash value of her life interest in the $25,000

ascertained by an actuary, who made the value to be $18,690. She presented a claim for this to the commissioners and received in three dividends the sum of $1,476 in all for this and other claims, which dividends she still retains, and has never offered to repay them.

The appellant made application to the court of probate for the district of Hartford for an allowance as widow, for her maintenance during the settlement of the estate, and an allowance of $2,500 was made and paid to her.

A number of pieces of real estate which were heavily mortgaged, and some not mortgaged at all, were sold by the executor, amounting in all to the sum of $3,767. The appellant was entirely passive in regard to these sales. She was not asked to give consent to them, and she neither gave nor withheld consent, unless consent can be inferred under the circumstances from her silence and inactivity.

The estate still remains unsettled, and the income derived from rents (for it is all real estate, and rented) on the first day of January, 1890, amounted to $1,800 over and above all expenses.

The amount that has been paid in dividends to creditors during the same time has been about $13,000.

Carter died possessed of a large amount of real estate, but nearly all of it was heavily mortgaged. The inventory of his real estate amounted to $446,000. There were mortgages on the estate amounting to $277,916, and there were other unsecured claims amounting to $160,000.

Upon these facts the appellant claimed that she was entitled to have dower assigned to her in the real estate of her late husband; that the ante-nuptial agreement was not a legal or equitable bar to her right of dower; that the agreement not having been performed by Mr. Carter or his estate, she was entitled to dower at least in a portion of the estate; that she had not waived her right of dower and was not estopped from claiming it by reason of her conduct subsequent to the decease of her husband, or by reason of any of the facts found; and that there was no election on her part not to take dower; and claimed that, upon the facts found, the decree

of the probate court should be reversed and judgment rendered for the appellant. The court (*Thayer, J.,*) overruled these claims and rendered judgment that the decree of the probate court be affirmed with costs. The appellant appealed.

*F. L. Hungerford,* for the appellant.

1. The statute in force at the time the ante-nuptial agreement was made (now Gen. Statutes, § 622,) is as follows:— " Any settlement of property made in favor of a woman, in contemplation of marriage, to take effect after the death of her intended husband, and expressed to be in lieu of dower, shall be a bar to dower in his estate, unless the title to such property shall fail in whole or in part, and then she shall be entitled to dower in his estate, or in such part of it as shall make up the deficiency caused by such failure, not exceeding the value of such dower." An earlier statute, (now embodied in Gen. Statutes, § 618,) provided that dower should be barred by a provision for the wife's support " by way of jointure." The provision by way of jointure mentioned in the statute does not mean common law jointure simply. Neither do the sections referred to mean, when taken together, that a provision by way of jointure is a bar to dower whether the provision fails or not, but that a settlement of property is not a bar if the title fails in whole or in part. On the contrary, the proper construction of the two sections is that *any* settlement of property, by whatever name it may be called, made in favor of a woman in contemplation of marriage, to take effect after the death of the intended husband and expressed to be in lieu of dower, shall not be a bar to dower if the title to such property fails in whole or in part. "Jointure," says Webster, " is in law an estate settled on a wife and which she is to enjoy after her husband's decease for her own life at least and in satisfaction of dower." At common law the estate so settled should have been a freehold estate. Thus Bouvier, in defining jointure, says it is " a competent livelihood of freehold for the wife of land and tenements, to take effect in profit or possession presently after

the decease of the husband, for the life of the wife at least."
In this state, however, jointure need not be a freehold es-
tate, but may be either real or personal estate. 1 Rev. Swift
Dig., 90. The word jointure as it has always been used in
our statutes relating to dower has not the technical meaning
attached to it at common law, but is used in the sense de-
fined by Webster, and means the same thing as is otherwise
expressed as "a settlement of property." Rev. Statutes of
1821, p. 180, sec. 1.

2. The ante-nuptial agreement between Mr. and Mrs. Car-
ter was intended as a settlement of property, and its pro-
visions having failed it is no bar to dower. The title to
that property failed because during the lifetime of Mr. Car-
ter the bargain and sale and assignment, which he made in
the ante-nuptial agreement, were not perfected by an actual
delivery or setting out of the property to the trustee.

3. But if the ante-nuptial agreement is not a "settlement
of property" within the fair interpretation of the statute,
then it is clear that it is not a legal bar to dower, whether
performed or not. Only provisions by way of jointure and
settlements of property constitute a legal bar, and they only
when the title does not fail. Ante-nuptial agreements not
falling within the above description constitute, when per-
formed, an equitable bar to dower, and will be enforced in
equity when the widow contrary to her agreement seeks to
enforce her dower rights. In the case at bar the equity ju-
risdiction of the court is not appealed to by the representa-
tives of Mr. Carter's estate for relief against the present
application, and the ante-nuptial agreement not having been
performed there is no ground for such an appeal. *Andrews*
v. *Andrews*, 8 Conn., 79 ; *Selleck* v. *Selleck*, id., 86 ; *Hastings*
v. *Dickinson*, 7 Mass., 153 ; 1 Bishop on Married Women,
§ 426.

4. It only remains to consider whether anything occurred
after the death of Mr. Carter which should operate as an es-
toppel to, or waiver of, the appellant's right of dower. The
only grounds upon which it is conceived that any claim of
estoppel or waiver might be based, from any facts found in

the record, are two :—(1) the reception of an allowance of $2,500 by the widow for her maintenance during the settlement of the estate ; and, (2) the presentation to the commissioners of a liquidated claim of $18,690, as the cash value of the appellant's life interest in $25,000. As to the allowance for support it is sufficient to say that she never agreed to relinquish her right to such an allowance during the settlement of her husband's estate. An agreement that would bar dower would not bar this right. Nor would the presentation of her claim for the $18,690 work an estoppel or waiver. In the trial before the referee an attempt was made to show that the appellant with full knowledge of her legal rights deliberately chose between making a claim for dower and presenting a liquidated claim to the commissioners, and that she decided to take her chances with the unsecured creditors. That attempt completely failed and the referee in his report refutes it in unmistakable language. He finds that whatever the appellant did in the matter was done under the full belief that she had no right of dower. She could not therefore be choosing between the contract provision and dower. Surely if a waiver is " an intentional relinquishment of a known right " there was no waiver here. If an election is a choice between two alternatives there was no election ; and if an estoppel is at all based upon the ground that to allow the truth to be shown would be contrary either to sound policy or to good morals, there is no estoppel.

*C. E. Perkins* and *A. Perkins*, for the appellees.

Andrews, C. J. We agree with the counsel for the appellant that the ante-nuptial contract made between her and her husband was not a jointure, certainly not in the common law meaning of a jointure. Whether or not it was a " settlement of property made in her favor," so as to bar her dower in her husband's estate, under Gen. Statutes, § 622, is a question of more difficulty and one we do not decide. It was, at any rate, a contract by the terms of which she did, in consideration of the promises made to her therein, relin

quish and discharge all claim she had or might ever have for dower in the estate of Mr. Carter, her intended husband. She did this in plain, direct and unequivocal words, in the present tense. If, however, it be admitted that at her husband's death she might, notwithstanding that agreement, have had dower assigned to her, she did not do so. She did not then claim it. She conducted herself then as though she had parted with all right to dower and as though she had in place of it a right to recover on the agreement. The ten thousand dollars mentioned in that agreement had been paid to her, partly in cash and partly in an exchange of notes which she accepted as payment. All the conditions of her husband's estate—that it was deeply insolvent, the amount of the real estate, the mortgages, the unsecured debts—were as fully known to her then as they are now. With such full knowledge she presented to the commissioners a claim for the present worth of her life-interest in the sum of twenty-five thousand dollars, and it was allowed to her to the amount of eighteen thousand six hundred and ninety dollars. No objection was made to this allowance by the executor, or by any other creditor of Mr. Carter. It seems to have been treated as a provision for her in lieu of dower. All this was shortly after her husband's death in 1875. The settlement of the estate has proceeded from that time to this on the theory that she was a creditor of the estate and not a doweress. She has received dividends on the amount allowed to her in common with the other creditors. These dividends she keeps and has never offered to repay. In 1889, fourteen years after the death of her husband, she for the first time claimed to be entitled to have dower set out to her.

The contention of the appellees in this part of the case is, that the appellant has elected to take the provisions made for her in the agreement and that thereby she has released her right to take dower.

It would contradict the terms of the ante-nuptial agreement to pretend that the appellant is entitled to have the provisions mentioned in it and dower besides. Granting

that she might have either, certainly she cannot have both. It is strenuously argued by her counsel that she has never made any election at all; has never chosen; has never—to use his own expressive figure—"stood at the parting of two ways, one of which led to dower and the other to the provisions in the ante-nuptial contract, along either of which she might walk," and elected to pursue one rather than the other. With this argument we are not able to agree. It seems to us to overlook or to greatly misapply the facts of the case. That the appellant had entered into the ante-nuptial agreement proves that she knew she would be entitled to dower except for the existence of that agreement. That she availed herself of the provisions of that agreement and did not claim dower is true. At the death of her husband she consulted her trustee as to the effect that contract had on her right to have dower. He was a lawyer and stated to her his opinion. She requested him to consult other lawyers whose names are stated in the brief, than whom none were ever more eminent or learned in the law. He did so, and informed her that their opinion concurred with his own, to the effect that she had no right to dower and that her only way was to present to the commissioners a claim for the cash value of her interest in the twenty-five thousand dollars. Upon this advice she acted and presented her claim to the commissioners and did not claim dower. A person never asks advice as to what course of conduct he shall pursue, except where there is more than one which is open, and he is in doubt as to which he will take. One never inquires what road he shall take when there is but one possible way by which he can go. Where one is certain there is nothing about which advice can be sought. The fact that the appellant asked advice indicates that her mind was deliberating between dower and something else, was weighing considerations on the one side and the other, was seeking to come to a conclusion, was exercising a choice. It is argued that she could not make a choice because she was led to believe from the advice given to her that her

right to dower was cut off by the agreement. This is a confusion of thought. It is putting the cause of the choice for the choice itself. Where a person has actually pursued one of two courses of conduct because he believed he could not successfully pursue the other, that is making an election between them. To argue about it would seem to be superfluous. That the appellant believed the advice she received and acted upon it shows, not that she did not choose, but that she had a reason for her choice which was satisfactory to her.

Election is the choosing between two rights by a person who derives one of them under an instrument in which a clear intention appears that he should not enjoy both. The ante-nuptial agreement in this case is such an instrument. At the death of her husband two courses were open to the appellant, of which she could take one but not both; that is, either to take dower or the provisions in the agreement, and as she has made a choice, by that choice she must abide. The provisions in that agreement being designed as a satisfaction of her claim for dower, she cannot accept the former without renouncing the latter. The legal effect of taking one is to discharge the other. Snell's Equity, 178 ; *In re Vardon's Trusts*, L. R., 28 Ch. Div., 124; *Herbert* v. *Wren*, 7 Cranch, 370 ; *Hotchkiss* v. *Brainerd Quarry Co.*, 58 Conn., 132.

Another point made in the case is, that the court of probate cannot enforce an election, that being solely an equitable power. It is true that courts of probate do not have any general equity jurisdiction. But where an estate is in settlement before a court of probate, and an equity arises between the persons interested in such estate incidental to and growing out of such interest, then that court not only may but must apply and enforce it in order to do justice to all · parties and to settle the estate. To this extent courts of probate have the fullest equity powers. *Beach* v. *Norton*, 9 Conn., 198; *American Bible Society* v. *Wetmore*, 17 id., 187 ; *Ashmead's Appeal*, 27 id., 241; *Mix's Appeal*,

35 id., 123; *Vail's Appeal*, 37 id., 185; *Hewitt's Appeal*, 53 id., 24; *Chase's Appeal*, 57 id., 236.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.