ROGERS HORNSBY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY JEANETTE HORNSBY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 39817, 59013, 59014. Promulgated June 30, 1932.

*Arnold Markel*, C. P. A., for the petitioners.
*J. D. Kiley*, Esq., for the respondent.

OPINION.

VAN FOSSAN: The respondent determined deficiencies against Rogers Hornsby for the years 1926 and 1927 in the respective amounts of $1,627.80 and $7,026.69. For the year 1927 a penalty of $1,756.62 was asserted for delinquency in filing. The deficiency and penalty against Mary Jeanette Hornsby are for the year 1927 and are in the amounts of $90.22 and $22.56, respectively. The first issue involves the question of petitioners' domicile, the petitioners contending that they were domiciled in Texas and entitled to file returns on a community property basis. The second issue is raised as to the assertion of the penalty for delinquent filing. A third issue as to capital net gain for 1927 was withdrawn by petitioners.

Rogers Hornsby is a professional baseball player. Mary Jeanette Hornsby is his wife. Hornsby was born and lived in Texas until 1915, when he joined the St. Louis National League baseball team. He remained with the St. Louis team until 1927, when he was transferred to the New York team of the same league. In 1928 he was traded to the Boston team, and later to the Chicago team.

Prior to his first marriage, which occurred in 1918, Hornsby boarded at various addresses while in St. Louis. After his marriage he and his wife resided in St. Louis during the baseball seasons. In 1917 he bought a home for himself and his mother at 1304 North Commerce Street, Fort Worth, Texas, where he resided during the fall and winter months. After his marriage he and his wife used this property as a home. In 1923 Hornsby was divorced from his wife. As a part of the settlement coincident with the divorce he deeded his wife the Fort Worth property. Since that time he has owned no property in Texas.

In early 1924 Hornsby married his present wife, the petitioner, Mary Jeanette Hornsby. She was a resident of St. Louis, having lived there all her life. During 1924 and 1925 Hornsby and his wife resided in St. Louis with her mother during most of the time. In 1926 Hornsby and his wife's mother purchased an apartment house in St. Louis and the petitioners lived in one of the apartments up to the time of his transfer to New York in 1927. During 1927 they lived in a furnished apartment in New York. In 1928 Hornsby purchased a farm or country place outside St. Louis, paying $60,000 for the same. This place is their present home.

During 1926 and 1927 Hornsby had no income arising from sources in Texas. He voted in Texas in 1918 and has voted nowhere since. He paid no taxes on property in Texas during the taxable years, but paid taxes in Missouri.

During 1924, 1925 and part of 1926, after the transfer of the home at 1304 North Commerce Street, Forth Worth, Texas, to his divorced wife, Hornsby maintained a home for his mother at 920 Macon Street, Fort Worth, and after her death in September, 1926, bought a home for his sister at 4075 Bunting Avenue, Fort Worth.

In their tax returns for 1925 and 1926 both petitioners gave 1304 North Commerce Street (the property deeded to the divorced wife) as their address. In the 1927 returns they gave 4075 Bunting Avenue (the home of Hornsby's sister) as their address.

During the years in controversy Hornsby often visited his mother and sister during the months of October to January, sometimes staying at their homes and sometimes at a hotel. He also made extensive visits to other relatives and went on hunting trips in Texas. These visits were of varying duration, from a few days to two weeks or more.

Hornsby declared to various persons that after his baseball days were over he expected to return to Texas.

The tax returns for 1927 of both petitioners were prepared and signed by them and sworn to on February 17, 1928. Hornsby gave them to his wife with instructions to file the same on March 15, 1928, leaving a check in partial payment. He then left for the spring training trip. Mrs. Hornsby voluntarily filed them on May 17, 1928, having forgotten to file them at the proper date.

On the above facts petitioners ask us to hold that they were legally domiciled in Texas during the taxable years. This we are unable to do.

Prior to 1923 it seems clear that Hornsby had a legal domicile at 1304 North Commerce Street, Fort Worth. During that year, however, he was divorced from his wife and deeded her the property as

part of the settlement. Thereafter Hornsby had no interest in that property and no right to live there. It would seem so clear as to require no elaboration in argument that he necessarily gave up any and all rights to claim it as a domicile. He and his second wife had no right to use this address in their 1925 and 1926 tax returns. Thereafter he maintained a home for his mother at 920 Macon Street and after her death bought a home for his sister at 4075 Bunting Avenue. Speaking of the year 1924, Hornsby testified: "I claimed that [Fort Worth] was as much my legal residence as any place else, because I had maintained and taken care of my mother there. I had no regular residence in 1924." None of the witnesses, not even Hornsby himself, testified that he bought or maintained either of the two places as a "home" for himself. He characterized his trips to them as "visits," just as visits to other relatives. Sometimes he stayed at hotels. The general tenor of statements employed by the witness was to the effect that Hornsby always called Texas his home and expected to return there after his baseball days were past. This general language and an expectation to return to the State of Texas are not enough to establish the domicile for the purpose of income-tax returns. There must first be an established domicile, a specific place to which there must be a persisting intention to return. Hornsby was precluded by his divorce from claiming the North Commerce Street property as a domicile. In determining whether he had a domicile in Texas subsequent thereto we are not limited to, or necessarily bound by, expressions of the party. We may consider all facts and circumstances that bear on the question at issue. Nor are we called on in these cases to determine where the legal domicile of petitioners is, if not in Texas. Our problem is to determine whether or not their legal domicile is in the State of Texas. The burden of proving the case rests on petitioners, and on the record we are unable to say that during the taxable years they had a domicile in Texas.

The above conclusion is the same as reached in *Lee Rosenberg*, 10 B. T. A. 601; affd., 37 Fed. (2d) 808, in which case will be found a full discussion of the question of domicile.

The only question remaining relates to the tardy filing of petitioners' returns for 1927. The penalty may be avoided only if the tardy filing was due to a reasonable cause and not to willful neglect. Both conditions must exist. Here the only excuse is that one of the petitioners forgot to file them. This can scarcely be said to be a "reasonable cause" for failing to perform such an important act. *Gus V. Winston et al.*, 22 B. T. A. 1194. See also *Eagle Piece Dye Works*, 10 B. T. A. 1360. The penalties were properly imposed.

*Decision will be entered for the respondent.*