J. W. McCULLOCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29266, 36943.    Promulgated October 6, 1933.

*Villard Martin, Esq.*, for the petitioner.
*Maxwell M. Mahany, Esq.*, for the respondent.

OPINION.

MATTHEWS: These proceedings, consolidated for hearing and decision, arise upon deficiencies in petitioner's income taxes for the calendar year 1924 of $13,138.33, and for 1925 of $8,899.97. Three issues are raised, only the first of which applies to both years, the second and third being limited to 1925: (1) The respondent's inclusion as income of cash dividends of a corporation of which petitioner was a stockholder, paid in 1924 and 1925, petitioner contending that a previous stock dividend declared by the corporation made the subsequent cash dividends a return of capital which should have been credited to the cost of the stock; (2) respondent's disallowance in 1925 of a loss which petitioner contends was sustained in that year as the result of a contract then signed; and (3) respondent's refusal to allow petitioner to apportion 1925 profits, properly returnable

under the capital gains provision, between that basis and the ordinary basis provided.

The cases were submitted on a written stipulation of facts signed by counsel for the parties, which is as follows:

*Issue 1.*

During the years 1924 and 1925 the petitioner, then a stockholder in the Independent Oil & Gas Company, and by virtue of his ownership of such stock, received from said company cash distributions in the amounts of $57,415.87 and $10,000.00 respectively, which amounts were not reported by the petitioner on his income tax returns of 1924 and 1925 as taxable dividends or as ordinary taxable income. In determining the deficiencies against the petitioner for the years 1924 and 1925 the respondent Commissioner included the above amounts as being taxable dividends. The petitioner contends in the petition filed herein that the $57,415.87 and $10,000.00 cash distributions of 1924 and 1925 were not taxable dividends of the Independent Oil and Gas Company, but instead represented a non-taxable return of capital, which should be applied against and reduce the basis of his stock for the alleged reason that " * * * at the time these dividends (distributions) were paid to the petitioner the surplus account of the said Independent Oil & Gas Company had a deficit."

An analysis of earned surplus of the Independent Oil & Gas Company from date of organization to December 31, 1925, as disclosed by the books of the company, and unaffected by any reserve for discovery depletion, or by the adjustments of cost depletion made by the Bureau of Internal Revenue for income tax purposes, as more fully explained infra, is as follows:

| Year | Net Income | Net Loss | Cash Dividends | Additions to Surplus | Balance Earned Surplus |
|---|---|---|---|---|---|
| 1919 | | $14,978.26 | | $(14,978.26) | $(14,978.26) |
| 1920 | | 153,808.35 | | (153,808.35) | (168,786.61) |
| 1921 | | 208,009.00 | | (208,009.00) | (376,795.61) |
| 1922 | $1,486,649.67 | | $456,198.74 | 1,030,450.93 | 653,655.32 |
| 1923 | | 245,895.21 | | (245,895.21) | 407,760.11 |
| 1924 | 654,016.09 | | 447,425.00 | 206,591.09 | 614,351.20 |
| 1925 | 2,569,598.27 | | 474,750.00 | 2,094,848.27 | 2,709,199.47 |
| Total | $4,710,264.03 | $622,690.82 | $1,378,373.74 | $2,709,199.47 | $2,709,199.47 |

In arriving at the Earned Surplus figures, supra, cost depletion was deducted in the amounts set forth below. In the audit of the income tax returns of the Independent Oil and Gas Company, and for the purpose of determining the income tax liability of said company for the years indicated, adjustments of cost depletion allowable were made as indicated below:

| | Cost Depletion Sustained Per Books | Cost Depletion Sustained, Allowable and Allowed by Bureau of Internal Revenue in Determination of Tax Liability | Difference | |
|---|---|---|---|---|
| 1919 | $8,497.80 | $8,497.80 | | None |
| 1920 | 133,892.39 | 133,892.39 | | None |
| 1921 | 90,289.83 | 90,289.83 | | None |
| 1922 | 696,904.51 | 700,716.56 | Increase | $3,812.05 |
| 1923 | 550,991.80 | 420,862.87 | Decrease | 130,138.93 |
| 1924 | 628,699.65 | 506,353.02 | Decrease | 122,346.63 |
| 1925 | 383,220.08 | 413,603.70 | Increase | 30,383.62 |
| | $2,492,496.06 | $2,274,206.17 | Net Decrease | $218,289.89 |

The balances of earned surplus, resulting after making the adjustments on account of cost depletion, are as follows:

| Year | Balances Earned Surplus per Books | Corrections on Account of Cost Depletion by Bureau in Determining Tax Liability of Independent Oil & Gas Co. | Balances Earned Surplus per Bureau |
|---|---|---|---|
| 1919 | $(14, 978. 26) | None | $(14, 978. 26) |
| 1920 | (168, 786. 61) | None | (168, 786. 61) |
| 1921 | (376, 795. 61) | None | (376, 795. 61) |
| 1922 | 653, 655. 32 | (Increase 3, 812. 05) | 649, 843. 27 |
| 1923 | 407, 760. 11 | Decrease 130, 138. 93 | 534, 086. 99 |
| 1924 | 614, 351. 20 | Decrease 122, 346. 63 | 863, 024. 71 |
| 1925 | 2, 709, 199. 47 | (Increase 30, 383. 62) | 2, 927, 489. 36 |
| Total | $2, 709, 199. 47 | Net Decrease 218, 289. 89 | |

No reserve for discovery or percentage depletion was set up on the books of the company but in arriving at the taxable net income of the Independent Oil & Gas Company for income tax purposes the Bureau of Internal Revenue allowed for the years 1919 to 1925, discovery and percentage depletion in excess of cost depletion in the following amounts:

*Discovery depletion*

| | |
|---|---|
| 1919 | None |
| 1920 | None |
| 1921 | $53, 497. 73 |
| 1922 | 1, 437, 122. 15 |
| 1923 | 171, 180. 20 |
| 1924 | 387, 035. 68 |
| 1925 (Percentage Depletion) | 1, 145, 896. 80 |
| Total | 3, 194, 732. 56 |

The Independent Oil & Gas Company stock had a par value of $1.00 per share. The analysis of earned surplus for the years 1919 to 1925 above set out, and as appearing on the books of the company, and as computed under the Bureau's computation after adjustments for cost depletion corrections, did not take into consideration certain stock dividends authorized and made by the Independent Oil & Gas Company as follows:

| | |
|---|---|
| 1920 | $43, 824. 29 par value of stock |
| 1922 | 2, 000, 000. 00 par value of stock |

On the books of the corporation the $2,043,824.29 par value stock dividends were charged against and served to reduce on the books the Surplus from Appreciation Account which had been set up as a liability to offset a corresponding appreciation asset account, representing increase in value of producing oil and gas leases.

*Issue 2.*

During the year 1925 and for some time prior thereto the petitioner was a member of and owned 80% of the interest in a partnership, designated for convenience as the McCulloch partnership.

On September 9, 1925 the petitioner organized under the laws of the State of Delaware a corporation known as the J. W. McCulloch, Inc., with authorized capital stock of 200,000 shares of no-par value common stock.

During the month of November 1925 the petitioner entered into an oral agreement or contract with one S. J. Leonard of New York, the agreement

providing that Leonard would induce a certain Rondale corporation, controlled by him, to invest a certain amount of cash in the stock of the J. W. McCulloch, Inc. corporation or its successor. The petitioner agreed that if Leonard was successful in so doing, and if the Rondale corporation did so invest in the stock of the corporation controlled by McCulloch, he, the petitioner, would sell to Leonard at 2½¢ per share 20,000 shares of the J. W. McCulloch, Inc. or the McCulloch Oil Company.

On December 21, 1925 the J. W. McCulloch, Inc. company adopted a resolution authorizing an increase in capital stock from 200,000 to 500,000 shares no-par value common stock, and a further resolution that the name of the company should be changed to "McCulloch Oil Company."

During the period September 9, 1925 to January 23, 1926 neither the J. W. McCulloch, Inc. nor the McCulloch Oil Company owned any assets, and had outstanding only qualifying shares of the directors.

On January 23, 1926 the McCulloch Oil Company directors adopted the following resolution:

WHEREAS, on the 23rd day of January, 1926, J. W. McCulloch for and on behalf of this corporation entered into a contract with Rondale Corporation for the sale of 50,000 shares of the capital stock of this company, upon the terms and conditions set out in said contract, and,

WHEREAS, it is to the best interest of this corporation that said contract be approved.

Therefore, Be It Resolved, that the said agreement entered into by and between the said Rondale Corporation and McCulloch Oil Company, on the 23rd day of January 1926, be and the same is hereby approved.

On January 23, 1926 the McCulloch Oil Company, then having no assets, in exchange for the assets of the McCulloch partnership, agreed to purchase those assets for an agreed 100,000 shares of stock, the stock to be issued in proportion to the ownership in the partnership, and the transfer of the partnership assets was shortly thereafter made and the stock issued, the stock being issued to the partnership owners or their nominees. Pursuant to this transaction J. W. McCulloch, the petitioner, was issued 58,900 shares and Ocie McCulloch, his wife, was issued 20,000 shares.

On January 23, 1926 the McCulloch Oil Company and the Rondale Corporation entered into an agreement for the purchase by the Rondale Corporation of a certain number of shares of McCulloch Oil Company, the purchase to be made direct from the corporation, the McCulloch Oil Company agreeing to acquire certain assets from the McCulloch partnership as above stated.

Notwithstanding the Rondale Corporation had not entirely completed its contract of January 23, 1926 with the McCulloch Oil Company, the petitioner during May 1926 directed his wife, Ocie McCulloch, to transfer to Mr. Leonard the 20,000 shares of stock then in her name, the 20,000 shares being the same number provided for in the November 1925 agreement between petitioner and Leonard. The shares were so transferred and delivered to Leonard shortly thereafter, subject only to the qualification that petitioner would expect Leonard to see that the Rondale corporation entirely fulfilled and completed its January 23, 1926 agreement with the McCulloch Oil Company. The petitioner, when filing his Federal income tax return for 1925, deducted as a loss on this transaction the sum of $114,577.41 less $57,415.87 and $10,000.00, and claimed a net loss of $47,161.54, which loss he now claims should be the $114,577.41 without reduction of the $57,161.54. The respondent, in arriving at the deficiency for the year 1925 has not allowed any deduction on account of the $114,577.41 loss alleged by the petitioner to have been sustained on this transaction.

*Issue 3.*

During the year 1925, the petitioner realized a profit upon sale of certain stocks, and reported same in substance as follows:

| | |
|---|---:|
| 51,100 Independent Oil & Gas Co. stock (held over two years) | $921, 987. 72 |
| Miscellaneous Stocks (held less than two years) | 107, 025. 35 |
| | $1, 029, 013. 07 |
| Less: McCulloch Oil Co. stock sale (discussed infra) | 47, 161. 54 |
| Net profit | $981, 851. 53 |

This $1,029,013.07 profit less the alleged $47,161.54 loss, balance $981,851.53, the petitioner reported on his return as follows:

| | |
|---|---:|
| As ordinary gain (about 28% of total) | $267, 546. 17 |
| As capital net gain (about 72% of total) | 714, 305. 36 |
| | $981, 851. 53 |

The respondent Commissioner, in computing the deficiency for 1925, after eliminating the $47,161.54 McCulloch stock loss, discussed supra, apportioned the $1,029,013.07 profit as follows:

Taxable as ordinary gain—profit on sale of stock held less than 2 years— $107,025.35.

Taxable as capital net gain—profit on sale of stock held over two years— $921,987.72.

That is, the respondent has held that if the petitioner elects to have taxed as capital net gain any part of the profit from the sale of the stock held for more than two years, all of the profit so realized on such stock must be so taxed, regardless of the circumstance that all of said stock may not have been sold at the same time in 1925.

The petitioner, on the other hand, contends that under the controlling statutory provisions he may elect to have taxed as ordinary gain such proportion of the profit on sale of the stock held for more than two years as will result in the minimum tax.

Certain adjustments made by the respondent in arriving at the deficiencies for the years in question were not appealed from, and accordingly, no facts are stipulated with respect thereto. It is agreed that there may be introduced in evidence by the respondent the Federal income tax returns filed by the petitioner for the years 1924 and 1925, and the Revenue Agents' reports and notices of deficiencies issued with respect thereto.

The documents referred to in the last paragraph of the stipulation were offered and received in evidence.

1. The first issue, whether the cash distributions of $57,415.87 and $10,000, respectively, made to petitioner in 1924 and 1925 by the Independent Oil & Gas Co. were taxable dividends, involves section 201 (a), (b), and (d) of the Revenue Acts of 1924 and 1926 (which provisions are identical in the two Acts), set out in the margin.[1]

---

[1] Sec. 201. (a) The term "dividend" when used in this title (except in paragraph (9) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section

The petitioner contends that the stock dividends paid in 1920 and 1922 should have been deducted from the earned surplus in arriving at the balance available for distribution as dividends and points out that such deduction would result in a deficit in 1924 and 1925 in earned surplus so that cash distributions in those years must necessarily be said to come from the cost depletion reserve and as such under the statute (section 201 (d)) and regulations (65 and 69, article 1546) are not taxable as dividends. Before considering this argument it may properly be pointed out that the respondent allowed petitioner discovery and percentage depletion for 1919 to 1925, inclusive, aggregating $3,194,732.56 in excess of depletion on cost, and that since this reserve for any year in question could more than have absorbed the cash distributions, and presumably such distributions would have been made first from it, the distributions in question would have been taxable under the regulations. Such a reserve in excess of cost is not treated as capital under the regulations and distributions from it are taxable as dividends.

Taking the earned surplus, however, as set up in petitioner's books, after allowing for adjustments by respondent of only cost depletion, we are unable to accept petitioner's contention that stock dividends would diminish in any way this surplus. Furthermore, it is stipulated that the stock dividends were charged against the " Surplus from Appreciation Account," which had been set up as a liability to offset a corresponding appreciation asset account representing increase in value of producing oil and gas leases.

In *Hugh R. Wilson*, 3 B.T.A. 957, and *J. T. Hedrick*, 24 B.T.A. 444, we reviewed the whole question of whether a stock dividend is a " distribution " which reduces the surplus or earnings available for dividends. See also *Edward D. Untermyer*, 24 B.T.A. 906; affd., 59 Fed. (2d) 1004; certiorari denied, 287 U.S. 647. Cf. *Walker* v. *Hopkins*, 12 Fed. (2d) 262; certiorari denied, 271 U.S. 687. In the *Wilson* case we held that under section 201 (b) of the Revenue Act

---

245) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 204.

\*          \*          \*          \*          \*          \*          \*

(d) If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the basis of the stock provided in section 204, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this paragraph shall also apply to distributions from depletion reserves based on the discovery value of mines.

of 1918 a stock dividend was not a " distribution." In the *Hedrick* case we extended the same view to the corresponding section of the 1924 Act, here considered. On the authority of these decisions, this issue is decided for respondent.

2. The second issue relates to the loss claimed by petitioner in 1925 in the amount of $114,577.41. On the basis of the facts stipulated, petitioner sustained no loss in 1925. He did not in that year own the 20,000 shares of stock in the McCulloch Oil Corporation, which were sold to Leonard in 1926 for 2½ cents per share. It was not known in 1925 whether petitioner would ever have to sell Leonard any stock in the corporation. Furthermore, there is no evidence as to the cost of the stock sold to Leonard in 1926. This issue is also decided in favor of respondent.

3. The final issue is simply whether petitioner may, with respect to the capital net gain of $921,987.72 derived in 1925 from a sale of stock which he had then held more than two years, avail himself of the benefit of the capital gain provisions (sec. 208, Revenue Act of 1926) by returning a part of such gain at the rate of 12½ percent and the rest at the ordinary rate, so as to minimize the aggregate amount of tax payable. There is nothing in the statute which would authorize such an apportionment at the will of the taxpayer. Section 208 (b) gives to any taxpayer who derives a " capital net gain " in the taxable year the right to elect whether his taxes shall be computed as provided in sections 210 and 211 of the statute, or as follows:

A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 210 and 211, and the total tax shall be this amount plus 12½ per centum of the capital net gain.

The statute defines the term " capital net gain " as being the excess of the total amount of the capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income without including capital gain. The term " capital gain " is defined as meaning the gain from sale or exchange of capital assets consummated after December 31, 1921, and the term " capital assets " is defined as being property held by the taxpayer for more than two years. The term " ordinary net income " is defined as meaning the net income computed in accordance with the statute after excluding all items of capital gain, capital loss and capital deductions. If the taxpayer elects to have his taxes computed as provided in section 208, no part of his " capital net gain " may be included in " ordinary net income " in determining the tax payable. On this issue we find for the respondent also.

*Judgment will be entered under Rule 50.*