SAMUEL W. WEIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62126.   Promulgated April 26, 1934.

*Fred S. Weis, Esq.*, for the petitioner.
*Dean P. Kimball, Esq.*, and *E. C. Adams, Esq.*, for the respondent.

484

TRAMMELL: The first and principal issue in this case is whether the petitioner was domiciled or had his legal residence in the State of Louisiana or in the State of Illinois during the taxable year 1929. In 1920 petitioner took up his abode in the city of Chicago, Illinois, and throughout the taxable year resided there with his wife, except for short periods of absence. Prior to 1920 petitioner was domiciled in Louisiana.

Petitioner and his wife filed their income tax returns for 1929 with the collector at New Orleans, and each reported one half of the total

income. In auditing the returns respondent included in petitioner's income certain amounts reported in the wife's return, on the ground that during the taxable year petitioner was domiciled in Illinois, a noncommunity property state, and therefore the income could not be divided between petitioner and his wife, but the whole amount was taxable to him. Petitioner assigns this action of the respondent as error, contending that he never abandoned his original domicile in Louisiana, and that his residence in Illinois was only temporary. There is no controversy as to the amount of the gross income.

The respondent concedes that if the petitioner was domiciled in Louisiana during the taxable year, then all of the income in question was community income and as such could be reported one half by the petitioner and one half by his wife.

Change of domicile involves intention, coupled with a change of the place of actual abode. Intention is a state of mind, the satisfactory determination of which is often difficult, but certain general rules have been adopted by the courts as safe guides to follow in the solution of a problem such as we have here.

In determining the question of temporary residence or permanent domicile we are not limited to or necessarily bound by expressions of the party, but his intention is to be inferred rather from his conduct than declarations. "We may consider all facts and circumstances that bear on the question at issue." *Rogers Hornsby*, 26 B.T.A. 591, 593, and authorities cited. What, then, was petitioner's intention, as evidenced by his conduct, in respect to changing his domicile in 1920?

In support of his contention that petitioner was domiciled in Illinois during the taxable year, respondent points to the following facts: (1) That when petitioner left Louisiana for Illinois in 1920 the reasonable expectation was that his residence in the latter state would be of indefinite duration; (2) he engaged in certain business activities there, including buying and selling securities, and furnishing money for the development of a chemical process for coating paper; (3) he sold his home in New Orleans; (4) he joined clubs in Chicago; and (5) he contributed extensively to charities there.

On the other hand, the evidence establishes the following additional, pertinent facts: (1) Petitioner clearly had no desire from personal choice to change his domicile from Louisiana to Illinois, and reluctantly took up his abode there for the sole purpose of placating his wife, and in the hope that he would be able, after a time, to pursuade her to return to Louisiana with him; his residence in Chicago was for an indefinite duration only in the sense that the exact date of his return to New Orleans to reside could not be definitely forecast; (2) his principal business interests were in Louisiana; (3) he qualified as a voter by paying his poll tax in New

Orleans, and made no attempt at any time to acquire the right to vote or to engage in political activities in Illinois or elsewhere; (4) he contributed to Louisiana charities, retained membership in New Orleans clubs, and continued as trustee of a hospital there; he was born and reared in New Orleans, having made his home there until 1920; (5) it was his domicile of origin, it was the home of his parents to the time of their deaths, and his brothers and sisters were domiciled there; the old family home was there; (6) during the time he resided in Chicago with his wife he had occasion to execute deeds, leases, and other written instruments under seal, and in all such documents he described his legal residence as being in New Orleans, Louisiana; (7) in compliance with the provisions of the taxing statutes (see section 53 (b) (1), Revenue Act of 1928, and similar provisions of prior acts) requiring individuals to make their returns to the collector for the district in which is located their legal residence, petitioner filed his income tax returns with the collector in New Orleans; and (8) petitioner did in fact return to New Orleans to continue his permanent residence there as soon as practicable after his wife obtained a divorce and there was no longer hope of conciliation.

The term " legal residence " as used in the taxing acts above referred to means " domicile." *L. B. Peeples*, 27 B.T.A. 879, 882.

In determining the question of what state was the domicile of the petitioner we must keep in mind that the respondent has determined that petitioner was domiciled in Illinois. That determination is presumptively correct. The petitioner has the burden of going forward to introduce testimony for the purpose of overcoming that presumption. On the other hand, all the facts and reasons upon which the respondent based his determination do not have the benefit of presumptive correctness attaching to them. If no testimony is introduced we must accept that determination as correct. When testimony has been introduced we must consider the weight thereof for the purpose of determining whether it overcomes the presumption of correctness attaching to the Commissioner's determination. In determining the weight to be attached to testimony for the purpose of ascertaining whether it overcomes the presumption, we may take into consideration the fact that evidence has been introduced which carries with it another presumption, that is, that there is a presumption in favor of original domicile of birth against an acquired domicile in cases where the testimony is conflicting, as well as other rules of law as laid down by the courts in connection with the determination of domicile. *Catlin* v. *Gladding*, 4 Mason, 308; *Prettyman* v. *Conaway*, (Del.) 32 Atl. 15; *Donaldson* v. *State*, (Ind.) 78 N. E. 182; *In re Lyon's Estate*, 191 N.Y.S. 260. The above rule

proceeds from the view that abandonment or change of domicile is a matter of very serious nature, and an intention to make such a change requires proof by very satisfactory evidence. *Delaware, etc., R. Co.* v. *Petrowsky*, 250 Fed. 554. The courts have laid down the rule that proof of a change of domicile must be clear and convincing. *In re Newcomb*, (N.Y.) 84 N.E. 950, and in case of doubt, the presumption is that the domicile has not been changed. *Ausbacher* v. *DeNevue*, (La.) 13 So. 396.

While ordinarily the burden of proof as to change of domicile is upon the party who alleges it, in this case, the Commissioner having determined that the domicile was changed, the burden of proof is upon the petitioner to show that it was not. When testimony has been introduced for this purpose we can take into consideration the strictness of the proof required by the courts in connection with the change of domicile when once established and attach such weight to the testimony as we believe it is entitled to, considering all the facts, including the fact that Louisiana was the domicile of birth and the presumption against a change of domicile in cases of doubt or conflicting testimony.

The domicile of origin is not changed even by long continued absence if there is any intention of returning, *United States* v. *Luria*, 184 Fed. 643; affd., 231 U.S. 9, even though intention be doubtful, *White* v. *Brown*, 1 Wall. 217. And mere residence alone is neither conclusive nor sufficient evidence of a change of domicile, *Mitchell* v. *United States*, 21 Wall. 350; *In re Barclay*, (Pa.) 103 Atl. 274; *White* v. *Stowell*, (Mass.) 119 N.E. 121.

The rule is well stated, with abundant citation of authority, in Goodrich on Conflict of Laws, p. 31, as follows:

While exceedingly difficult questions may and do arise in settling the question of the acquisition of a domicile of choice, they come in the application of the rule, not the recognition of it. The domicile which a person once has, whether given by the law, or acquired through the exercise of choice, continues until another one is gained. Mere absence from a place does not lose it, however long that absence is continued, unless that absence is coupled with an intent to make a home in the new place. So an invalid, who has left home in search of health, with the hope of prompt return, may even give up all hope of returning, and yet retain the old domicile, if, upon examination of all the facts, he is not found to have settled upon some new spot as his home.

Considering all the facts and circumstances disclosed by the record before us bearing on the question of domicile, it is our opinion that the preponderance of the evidence is with the petitioner, and accordingly respondent's action on this issue is reversed.

The next issue in order for consideration is whether the gain derived on the sale of stock of the Ilg Electric Ventilating Co. is taxable solely as ordinary income, or may at the petitioner's

election be taxed in part as ordinary income and in part as capital net gain.

The term " election " in its legal sense means the choice of one of two rights or things, to each of which the party choosing has an equal right, but both of which he can not have, *Carter's Appeal* (Conn), 22 Atl. 320; *Hattersley* v. *Bissett* (N.J.), 29 Atl. 187, as when a man is left to his own free will to take or do one thing or another, which he pleases, *New* v. *Smith* (Kan.), 145 Pac. 880; a choice between different things, *Bowler* v. *Eisenhood* (S.D.), 48 N.W. 136; the act of electing or choosing, *State* v. *Hirsch* (Ind.), 24 N.E. 1062.

Obviously one can not at his election choose to do two inconsistent things or exercise two inconsistent rights, nor a part of the one and a part of the other; he must choose all of the one or all of the other. Thus, where a debtor is under the alternative obligation to pay one hundred dollars or deliver one hundred bushels of wheat, he has the choice to do one or the other until the time of payment; he has not the choice, however, to pay a part in each. *Smith* v. *Sanborn*, 11 Johns, (N.Y.) 59.

The facts show that the petitioner and his wife reported in their returns a total profit of $171,685.50 from the sale of stock of the Ilg Electric Ventilating Co. during the taxable year. The stock had been owned and held by the petitioner for more than two years, in fact for many years, some of it having been acquired prior to 1920. The profit was reported as follows: In the petitioner's return, as capital net gain $35,337.88, and as ordinary income $50,504.87. Corresponding amounts were likewise reported in the wife's return.

From these facts it is clear that the petitioner did not elect to have the entire capital net gain taxed as such, but that he split the total amount and reported $70,675.76 as capital net gain and $101,-009.74 thereof as ordinary income.

If the petitioner had reported as capital net gain the entire amount determined by him as derived from the sale of capital assets during the year, and the respondent had increased the amount of the capital net gain so determined and included such increase in ordinary income, a wholly different situation would be presented. It could not then be said that the petitioner had not elected to have the capital net gain taxed as such; but under the facts here before us, where the amount of the capital net gain actually derived and reported is not in controversy, and where the petitioner included in his return a portion of such gain as capital net gain and a portion as ordinary income, we can not say that he has elected to have the entire amount taxed as capital net gain.

Respondent contends, first, that the stock in question did not constitute a capital asset in petitioner's hands for the reason that he was

a dealer in the stock, and hence the profit derived from its sale was not capital gain. In the view we take of the issue, it is unnecessary to decide this question. Respondent further contends that in any event, even if the profit constituted capital net gain, petitioner is not entitled to have it taxed in part at the rate applicable to capital net gain and in part as ordinary income, but that the entire amount is taxable as ordinary income. On this point we sustain respondent's contention.

The pertinent provisions of the Revenue Act of 1928 are as follows:

SEC. 101. CAPITAL NET GAINS AND LOSSES.

(a) *Tax in Case of Capital Net Gain.*—In the case of any taxpayer, other than a corporation, who for any taxable year derives capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

\* \* \* \* \* \* \*

(c) *Definitions.*—For the purposes of this title—

\* \* \* \* \* \* \*

(5) " Capital net gain " means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B), the amount, if any by which the ordinary deductions exceed the gross income computed without including capital gains.

A taxpayer may elect, under the above quoted statute, to have all of the capital net gain, computed on the basis of all the capital transactions of the taxable year, taxed at the special rate of 12½ percent, but he may not have the net gain resulting from one capital transaction taxed at that rate and the net gain from another such transaction taxed as ordinary income. The entire amount of the capital net gain derived during the taxable year must be treated as capital net gain, or as ordinary income.

In *DeLancey Nicoll*, 16 B.T.A. 868; aff'd., 41 Fed. (2d) 1008, we held that a taxpayer could not return as capital net gain the profit realized upon the sale of one block of securities and deduct from ordinary income a loss sustained upon the sale in the same year of another block of securities. In that connection, we said:

Obviously, this definition of " capital net gain " (above quoted) must comprehend the *net result of all transactions* during any taxable year, involving the sale or exchange of capital assets, provided such result represents a net gain to the taxpayer. [Emphasis supplied.]

In *Lu Frisk Thomas*, 25 B.T.A. 810, and *J. W. McCulloch*, 29 B.T.A. 67, 73, we definitely held that under section 101 (a) of the 1928 Act, *supra*, and section 208 (b) of the 1926 Act, both of which

contain the same provisions, the taxpayer might not elect to treat the gain derived during the taxable year from the sale of capital assets in part as capital net gain and in part as ordinary income. To that extent our decisions were correct. However, in each case the respondent included in *capital net gain* the entire amount of profit derived from the capital assets, and in each instance *we approved his determination.* On the latter point we now think our decisions in the two cases last cited were erroneous, and they will not be followed in the future. We should have reversed the respondent's determinations and held that the entire amount of gain in each case should be included in and taxed as ordinary income in the absence of an election by the taxpayer to have it all taxed as capital net gain.

The entire profit derived from the sale of capital assets, where the taxpayer does not elect to have such entire amount taxed as capital net gain, must be included in and taxed as ordinary income. It is obvious, we think, under the plain language of the statute, unless the taxpayer elects to have the entire amount taxed at the 12½ percent rate it can not be said that he has elected to have the *capital net gain for the taxable year* so taxed, and in the absence of such an election the entire amount must be taxed as ordinary income.

In this connection respondent has raised the issue that, if we hold the profit above referred to is taxable as capital net gain, then the deduction for charitable contributions should be computed on the basis of the ordinary net income and should not take into account the capital net gain. The conclusion reached on the preceding issue renders it unnecessary to consider this question.

In his answer respondent raised an issue respecting the deduction by petitioner of the amount of $750 as charitable contributions representing donations of $200 to the Chicago Galleries Association, $300 to Wexler Child Education, and $250 to the Ravinia Guarantee Fund. The parties later stipulated that the first two items were not properly deductible in the income tax return of the petitioner for the year 1929, and apparently petitioner does not now contest respondent's contention on the last item, since it is not referred to in petitioner's brief. However, this last item represents a contribution to guarantee an opera and clearly, we think, does not come within the classification of a contribution to charity. Respondent's contention on this point is sustained.

The remaining issue relates to the deduction of a bond commission. In 1929 petitioner paid $15,000 as a commission for the placing of a bond issue in the amount of $275,000, the proceeds being used to retire bonds of like amount maturing in that year. Petitioner deducted the entire amount of the commission in his return for the taxable

year. Respondent allowed that portion of the commission attributable to the loan period falling within 1929 and disallowed the balance, holding that the commission was not deductible in its entirety in the year of payment, but should be spread over the life of the loan. Respondent's action on this issue is approved. *U.S. Playing Card Co.*, 15 B.T.A. 975; *Julia Stow Lovejoy*, 18 B.T.A. 1179; *Sigmund Spitzer*, 23 B.T.A. 776; *Western Maryland Ry. Co.* v. *Commissioner*, 33 Fed. (2d) 695.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ADAMS concurs in the result.

---

SMITH, dissenting: The majority opinion stands for the proposition that where a taxpayer files an income tax return and reports a part of the profit from the sale of capital assets as liable to ordinary income tax and the balance as capital net gain, the taxpayer has failed to elect that the gain should be taxable as capital net gain. In such a case I think the taxpayer has not failed to elect that the profits should be taxed as capital net gain and if it is more advantageous that the tax be computed upon the basis that the entire profit was capital net gain, the taxpayer is entitled to have his tax liability computed accordingly. The taxpayer should not be prejudiced by the fact that he was not aware that all of the profit should be treated as capital net gain instead of only a portion thereof.

ARUNDELL agrees with this dissent.