EDWARD D. UNTERMYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18836. Promulgated November 24, 1931.

*Eugene Untermyer, Esq., Charles S. Guggenheimer, Esq., Louis Marshall, Esq., Louis Malthaner, Esq.,* and *Henry Brach, Esq.,* for the petitioner.

*J. Arthur Adams, Esq.,* and *Frank A. Surine, Esq.,* for the respondent.

908

OPINION.

SMITH: The Revenue Act of 1921 includes in income dividends received and provides:

SEC. 201. (a) That the term "dividend" when used in this title (except in paragraph (10) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, except a distribution made by a personal service corporation out of earnings or profits accumulated since December 31, 1917, and prior to January 1, 1922.

(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but

any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent that, the basis provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares; and (2) the aggregate amount of such distributions received by him thereon.

It is petitioner's contention that the surplus accumulated by the Canadian corporation and available for distribution in dividends was, in the year of this distribution, insufficient to cover the payment made and accordingly a portion of such distribution was paid out of a depletion reserve representing 50 per cent of its net income for each year since organization, and to that extent did not represent a dividend taxable to him.

The Canadian corporation here in question was incorporated in 1919, and all of its income was derived subsequent to 1913, and there is no issue in respect to the time during which corporate earnings were accumulated.

Petitioner's contention is based upon the provisions of the Canadian income-tax law, which governs the tax liability of the corporation in question. It appears that under this law, stock dividends are treated for purposes of tax in the same manner as cash dividends. It further appears that under the Canadian law the allowance for depletion made to a corporation engaged in mining is not one based upon the cost of the property or one computed on discovery value, as under the income-tax laws of this country, but is an allowance granted by the Minister of Finance, determined in amount at his discretion, and that it is customary to grant an allowance of 50 per cent of the net income after deduction of depreciation.

A stock dividend of $300,000 was distributed in the year preceding the taxable year here in question, and petitioner contends that such distribution reduced the corporate surplus by this amount. It further appears that from the time of its organization through the calendar year here involved the corporation was allowed, as a deduction from its income for depletion, 50 per cent of its net operating income after allowance of depreciation.

It is petitioner's insistence that because the corporation is subject to Canadian law we must accept, in determining the corporate surplus available for dividend distribution, the amount of surplus shown upon the corporate books and give full effect to the reductions effected by the stock dividend distribution and by the depletion allowances granted by the Canadian Minister of Finance. It is insisted that, the corporation being subject to Canadian law alone,

we must accept the determination of net income as computed and set up on the corporate books in accordance with allowances and requirements of the taxing laws of that country, as a failure to do so would be in violation of the rule of comity.

We do not think that the authorities cited by counsel for petitioner are controlling. We can not see that the doctrine of comity is here involved. We are called upon to make no determination as to the corporation. The effect of our decision is in no way reflected in the corporate business or affairs. Our purpose is solely to determine what portion of a payment made to an American citizen .by this corporation, received by him, and in which the corporation has now no interest, is subject to tax by this Government under the provisions of its laws. The subject matter of the controversy here is the distribution made by the corporation to a citizen of this country, but the question does not arise until after that distribution is effected, and the corporation no longer has any right or interest in the funds. It appears to us to be a wholly unjustified application of the rule of comity to hold that the character of this payment, in the hands of this recipient, an American citizen, is to be determined by application of the Canadian taxing act, merely because the source of the income was in that country.

Petitioner contends that the accumulated and undistributed profits representing the corporate account of existing surplus should be accepted as it stands upon the books, but asks, in the event that the adjustment made by reason of the payment of the stock dividend be disregarded and this amount be restored to surplus, that the depletion reserve as set up be recognized as recovered capital and the deficiency be redetermined by elimination from petitioner's gross income of that portion of the dividend distributed to him from such reserve. It is insisted that an adverse decision upon the question of the reduction of accumulated profits by payment of a stock dividend does not decide the question in respect to the depletion reserve.

With this contention we can not agree. It appears to us that a decision upon each of these issues is determined by the same question—whether, in determining the character of dividend distributions made by a foreign corporation to a citizen of the United States to ascertain the tax thereon due under the provisions of our laws, we should accept the corporate account of accumulated earnings, as correctly computed for purposes of the taxing laws of the foreign country, or recompute such account to show corporate earnings in the sense in which that term is used in the applicable revenue law of this country by which the tax is imposed. If petitioner is correct in his contention that the reserve for depletion set up under the Canadian Act must be accepted for the purposes of the determination

here to be made, we think it must follow that the surplus account as computed under that act must also be accepted.

In this connection we must bear in mind that the stock dividend distributed to petitioner did not represent income under the provisions of our laws, as it did not in fact effect a distribution of corporate earnings. *Eisner* v. *Macomber*, 252 U. S. 189; *Walker* v. *Hopkins*, 12 Fed. (2d) 262; *Hugh R. Wilson*, 3 B. T. A. 957; *Marion H. Kennish*, 4 B. T. A. 303; *George W. Megeath*, 5 B. T. A. 1274. To accept petitioner's theory would be to permit him to receive distributions of stock representing the capitalization of all corporate earnings and then to receive distributions of cash to the full extent of his capital investment exempt from tax as a return of capital.

The respondent, in determining to what extent the distribution here in question is taxable under the American Act, has readjusted, for this purpose alone, corporate earnings by elimination of the reduction effected by the $300,000 stock dividend paid, and by inclusion of the amount represented by the excess of the allowance for depletion made by the Minister of Finance of the Dominion of Canada over the depletion allowance based upon cost of the property and allowable under the taxing laws of this country.

Under the applicable revenue act of this country, an American citizen is taxable upon amounts distributed to him by a corporation which represent earnings accumulated by it subsequent to February 28, 1913. For purposes of that act, we think the terms "earnings" and "profits" are to be construed in the sense in which there used. It has been repeatedly held that in construing the Federal taxing acts the terms used are to be considered with the meaning intended by Congress in their use and not changed or modified by provisions of law of the local jurisdiction. Cf. *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110; *New York, New Haven & Hartford R. R.* v. *United States*, 269 Fed. 907; *Boston & Maine R. R.* v. *United States*, 265 Fed. 578; *Rosenberger* v. *McCaughn*, 25 Fed. (2d) 699; *James R. Parkey*, 16 B. T. A. 441. This rule applies with equal force in case of a foreign corporation in respect to the laws of its domicile.

The depletion reserve in question represents an allowance granted the corporation under the laws of its domicile of a portion of its income exempt from tax, but a portion of this tax-exempt allowance represents corporate earnings in the sense in which that term is used in the taxing act of this country, and, when such earnings are distributed to a stockholder who is a citizen of this country, their character in his hands and for purposes of tax by this Government, is to be determined under the provisions of its laws.

The allowances granted by Canadian law to the corporation are for the purpose only of ascertaining the amount of the exaction by

that country from the corporation for purposes of that Government. The provisions of that law can not, we think, be invoked as a basis for determination or in limitation of a liability for tax under the laws of this country in the situation shown here to exist. The action of the Commissioner is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*