## 820

H. C. Gowran, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Edith Rose Suddard, as Executrix of the Estate of Thomas Suddard, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

George S. Hamilton, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Edward P. Hamilton, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 60890–60893. Promulgated June 27, 1935.

*A. L. Nash, Esq.*, for the petitioners.
*Isadore Graff, Esq.*, and *Harold D. Thomas, Esq.*, for the respondent.

### OPINION.

Leech: These consolidated proceedings are under reconsideration pursuant to the Board's order dated November 20, 1934. By order dated November 24, 1934, the proceedings were set for hearing evidence limited to the fair market value on July 1, 1929, of the Hamilton Manufacturing Co. preferred stock. At such rehearing on February 13, 1935, petitioners filed a motion that the Board vacate its order directing reconsideration, that the Board deny respondent's motion for reconsideration of the memorandum opinion heretofore entered, and that the Board enter judgment for petitioners. The principal ground for such motion was that the memorandum opinion had become final and that the Board was without authority, on November 20, 1934, to direct a reconsideration. In these proceedings the Board has never entered its final order, pursuant to section 906 (d) of the Revenue Act of 1924 as amended by section 601 of the Revenue Act of 1928. Thus, the Board, not having entered its decision in these proceedings, has the power to reopen the cases and revise its prior findings of fact and opinion. *Washburn Wire Co.* v. *Commissioner*, 67 Fed. (2d) 658. Accordingly, petitioners' motion filed on February 13, 1935, is denied.

The respondent has determined income tax deficiencies for the year 1929, in the following amounts:

Docket No. 60890_____ $5,831. 67
Docket No. 60891_____ 3,570. 84
Docket No. 60892_____ 3,771. 04
Docket No. 60893_____ 1,158. 44

He determined that preferred shares issued as a dividend on the common shares of the Hamilton Manufacturing Co., on July 1, 1929, were redeemed by the company in such a manner as to make the distribution essentially equivalent to the distribution of a taxable dividend under section 115 (g) of the Revenue Act of 1928.

The petitioners assigned error in such determination.

The Board, in its memorandum opinion heretofore entered, considered the proceedings only upon the basis of such assigned error and determined, upon the facts, that the preferred stock was not redeemed in 1929 in such a manner as to make the distribution essentially equivalent to the distribution of a taxable dividend. The parties did not specifically raise, nor did the Board consider, the question of whether the dividend was tax-free or taxable to petitioners when the shares were issued on July 1, 1929. This latter question has now been specifically raised by the granting of the respondent's motion for reconsideration on the ground that the memorandum opinion, heretofore entered, is in conflict with the decision in *Tillotson Manufacturing Co.* v. *Commissioner*, 76 Fed. (2d) 189, affirming 27 B. T. A. 913.

In deciding now whether the present dividend was tax-free or taxable, we are not considering a new issue raised for the first time by respondent's motion. The deficiency in controversy is asserted upon the basis of the respondent's determination that the dividend was taxable. The correctness of that deficiency is the general issue, in the consideration of which the Board is not limited to the theory advocated by either the respondent or the taxpayer. *Charles L. Coughlin*, 15 B. T. A. 515, 519; *James P. Gossett*, 22 B. T. A. 1279; affd., 59 Fed. (2d) 365; *John I. Chipley*, 25 B. T. A. 1103. The question before the Board now, as originally, inherently involves the taxable character of the dividend revealed by the evidence of record. If it be determined that the dividend was not a tax-free stock dividend when made on July 1, 1929, and therefore properly includable in income, that conclusion would be decisive here without passing upon the question of whether there was a redemption within the meaning of section 115 (g) of the 1928 Act.

There follow only those facts necessary to a determination of the one question now under consideration.

The petitioners, H. C. Gowran, George S. Hamilton, and Edward P. Hamilton, are individuals residing at Two Rivers, Wisconsin. The petitioner, Edith Rose Suddard, is the duly qualified executrix

of the estate of Thomas W. Suddard, deceased, who died testate September 11, 1931. She also resides at Two Rivers, Wisconsin.

Hamilton Manufacturing Co., hereinafter referred to as the company, was incorporated on February 23, 1926, under the laws of Wisconsin. Article III of its "Articles of Organization" as amended on April 5, 1926, and on December 27, 1928, provides that the company's capital stock shall be divided into 10,000 shares of preferred stock of the par value of $100 each, entitled to a preferential cumulative dividend at the rate of 7 percent per annum, payable out of net profits; and 30,000 shares of common stock without nominal or par value. Article III further provides that the holders of common stock shall have certain rights and powers, including voting rights, and, that the company shall have the right to purchase and redeem any part or all of the preferred stock on the first of January or July in any year, by paying $105 for each share together with accrued dividends, and that the preferred stock when so redeemed and canceled, may be reissued.

On July 1, 1929, the company's common capital stock, issued and outstanding, amounted to 18,680.8 shares held by 30 individuals in amounts ranging from 1 share to 6,189 shares.

Prior to July 1, 1929, the company's preferred stock, issued and outstanding, amounted to 7,155 shares held by approximately 300 individual stockholders. The petitioners held no shares of the company's preferred capital stock prior to July 1, 1929.

On July 1, 1929, the company's earned surplus available for distribution was not less than $444,147.05.

The company's board of directors, at a special meeting on June 29, 1929, adopted a resolution which, after setting forth that the company's surplus was in excess of $261,531.20, the total of a $14 per share dividend on 18,680.8 common shares outstanding, and that there remained unissued $261,600 par value preferred stock available for issue by way of stock dividend, provided in part as follows:

Resolved, by the Board of Directors of Hamilton Mfg. Company, that there be and there hereby is declared a dividend on all of the outstanding common capital stock of the company, to the holders thereof of record on July 1, 1929, amounting to $14.00 per share, and that the officers of the company be and they hereby are directed to pay and distribute said dividend forthwith to said stockholders of record, pro rata to each in proportion to his present holdings of common stock, in the form of certificates of the company's preferred stock, each share of said preferred stock so distributed to be taken at its par value, viz: $100.

The petitioners' holdings of common shares on July 1, 1929, and the number of preferred shares each was entitled to and did receive pursuant to the above mentioned resolution, were as follows:

| | Common shares | Preferred shares |
|---|---|---|
| H. C. Gowran | 3,812.25 | 533.715 |
| Thomas W. Suddard | 2,833.80 | 396.732 |
| George S. Hamilton | 6,189.00 | 866.46 |
| Edward P. Hamilton | 1,619.25 | 226.695 |

The preferred stock so received by petitioners on July 1, 1929, had a fair market value of $100 per share on that date. Subsequent to September 1929 petitioners agreed to sell to the company at par, all the preferred stock issued to them as a dividend, and on or about October 1, 1929, the company purchased at par all such preferred stock, for resale to its employees.

Petitioners argue that the present dividend on common stock declared and paid in preferred stock of the declarant company, is a stock dividend within the meaning of section 115 (f) of the Revenue Act of 1928,[1] and is, therefore, not taxable.

The authorities upon which they rely are: *Alfred A. Laun*, 26 B. T. A. 764; *Pearl B. Brown, Executrix*, 26 B. T. A. 901; affd., 69 Fed. (2d) 602; certiorari denied, 293 U. S. 570; and *Frances Elliott Clark*, 28 B. T. A. 1225; affd., 77 Fed. (2d) 89.

In all those cases, no preferred stock was outstanding when the preferred in question was distributed as a dividend on or in partial exchange for common stock. Thus, since (1) there was no severance of assets from the declarant corporations, and (2) there was no alteration of the preexisting proportionate interest of the stockholders, but " only a proliferation of preexisting interests ", (*Pearl B. Brown, Executrix, supra*) the disputed dividend was held nontaxable. (*Tillotson Manufacturing Co.* v. *Commissioner, supra*.)

In that case, which petitioners attempt to distinguish from the pending situation, there was a substantial amount of common stock outstanding when the dividend on the preferred stock, payable in common, was declared and paid. That fact sustains the Board's conclusion that the second prerequisite, above, to the exemption of that dividend from tax, was not there established. The position of the stockholder in receiving such common stock in that distribution was materially changed. He acquired substantially different and, as the court there held, " additional property rights which might well afford him a different and greater market with an increased money return."

So, here, as in the *Tillotson* case, though the first of the two recognized tests (*supra*) for distinguishing a taxable from a non-

---

[1] Sec. 115 (f). *Stock dividends.*—A stock dividend shall not be subject to tax.

taxable dividend, may have been met, the second has not. The preexisting proportionate interest of the stockholder was substantially changed. It is true that the present record discloses the converse situation as to the class of stock in which the dividend was declared and paid, but in the recent case of *James H. Torrens*, 31 B. T. A. 787, in applying the rule announced in the *Tillotson* case to similar facts, this Board said:

> If there be any difference in the degree of change effected in the stockholders' existing rights by the converse factual situation here, we do not think it sufficient to except this case from the application of that rule.

Our immediately pertinent inquiry is the taxable status of this new preferred stock, not from the standpoint of the corporation, but from that of the common stockholders. What did the petitioners, as common stockholders, receive? Here, not only was there a substantial amount of preferred stock of the declarant company outstanding when the present dividend on common was declared and paid in preferred stock, but none of that preferred was then owned by petitioners. The rights and attributes of these preferred and common stocks were materially different. Despite the mechanics of the corporate bookkeeping, which certainly do not control the taxable character of the disputed dividend in the hands of the petitioners (*Doyle v. Mitchell Bros. Co.*, 247 U. S. 179), they, as common stockholders, by the receipt of the present preferred stock, as a dividend, received rights in the assets of the corporation, as to future dividends, and upon liquidation, which were, before receipt of that preferred stock, limited to the then outstanding preferred stock. By the distribution of the preferred stock here, the then existing rights of petitioners, common stockholders, were increased, and those of the then preferred stockholders were decreased, to that extent. Nor is the effect of that fact in evaluating the difference between petitioner's rights before and after the receipt of the questioned preferred stock, avoided here by the financial condition of the corporation at the time of that receipt. Petitioner's rights, though constant in extent during each of those respective periods, were subject to fluctuation in value with that financial condition during each of such periods. It is that continuing potentiality of the common stockholders' new and proportionately altered interests, inherent in the preferred stock in dispute, not the mere liquidating value of that stock at any particular time, which gave petitioners " additional property rights which might well afford them a different and greater market with an increased money return." *Tillotson Manufacturing Co.* v. *Commissioner, supra.*

The disputed dividend, on common stock, declared and paid in preferred stock of the declarant company, of a fair market value

of $100 per share, when issued on July 1, 1929, was not a tax-free stock dividend.

The memorandum opinion heretofore entered in these proceedings is modified accordingly.

Reviewed by the Board.

*Decision will be entered pursuant to Rule 50.*

BLACK dissents.

---

McMAHON, dissenting: The result reached by the majority in these proceedings is contrary to applicable and corresponding provisions of the revenue acts,[1] rulings and regulations of the Secretary of the Treasury promulgated thereunder,[2] rulings of the Bureau of Internal Revenue,[3] provisions of the Federal Constitution,[4] decisions of the courts[5], and this Board,[6] and long continued, persistent, uniform practice of the officers charged with the administration of such revenue acts, all of which are controlling here.[7]

The conclusion is unavoidable that Congress has clearly expressed its intention to *exempt all stock dividends from income tax.* Beginning with the 1921 Act Congress, in section 201 (d), provided that a " *stock dividend* shall not be subject to tax." The term " stock dividend " is a broad term. The language used is plain, simple, and direct. It is here used in its ordinary sense and must be so applied. Congress did not limit or restrict it to any particular type of stock or stock of any particular class or to stock where stock of the same class *is not outstanding.* Obviously, if Congress had intended such limitation it would have so provided.

Congress in section 115 (a) of the applicable 1928 Act defined a taxable dividend as " any *distribution* made by a corporation to its shareholders *whether in money or in other property, out of its earnings of profits* accumulated after February 28, 1913." This definition contains two classes of dividends, i. e., (1) dividends " in money "

---

[1] Sec. 115 (a), (f), (g), 1928 Act; sec. 201 (a), (f), (g), 1926 Act; sec. 201 (a), (f), 1924 Act; and sec. 201 (a), (d), 1921 Act.

[2] Arts. 628 and 600, Regulations 74; arts. 1548 and 1599, Regulations 69; arts. 1548 and 1599, Regulations 65; art. 1548, Regulations 62; T. D. 3052 and T. D. 3059, 3 C. B. 38 (July–Dec. 1920).

[3] I. T. 2538, IX–1 C. B. 144 (1930); G. C. M. 6709, VIII–2 C. B. 132 (1929); and O. D. 801, 4 C. B. 24 (Jan.–June 1921).

[4] The Sixteenth Amendment and Art. I, sec. 2, cl. 3; Art. I, sec. 9, cl. 4.

[5] *Eisner* v. *Macomber,* 252 U. S. 189; *Gibbons* v. *Mahon,* 136 U. S. 156; *Towne* v. *Eisner,* 245 U. S. 418; *United States* v. *Phellis,* 257 U. S. 156; and *Weiss* v. *Stearn,* 265 U. S. 242.

[6] *Alfred A. Laun,* 26 B. T. A. 764; *Pearl B. Brown, Executrix,* 26 B. T. A. 901; affd., *Commissioner* v. *Brown,* 69 Fed. (2d) 602; certiorari denied, 293 U. S. 570; *Robert R. Meyer,* 27 B. T. A. 44; *Louis Rorimer,* 27 B. T. A. 871; *T. Pierre Champion,* 27 B. T. A. 1312; *Shelby H. Curlee, Trustee,* 28 B. T. A. 773; and *Frances Elliott Clark,* 28 B. T. A. 1225.

[7] For a fuller discussion of the foregoing citations, with the exception of the *Phellis* and *Weiss* cases, see the dissenting opinion in *James H. Torrens,* 31 B. T. A. 787, 803.

and (2) dividends " in other property ", but both must be " *distributions* \* \* \* *out of its earnings or profits* accumulated after February 28, 1913." (Emphasis supplied.) This section does not include any other classification of dividends, as did the 1916 and 1918 Acts,[8] the latter including a third classification of dividends " in stock of the corporation." The provision taxing dividends " in stock of the corporation " is the one that was declared unconstitutional in *Eisner* v. *Macomber, supra;* and it was therefore omitted in the 1921 Act and subsequent corresponding acts.

In section 115 (f) and (g), of the 1928 Act, and corresponding sections of previous acts back as far as the 1921 Act, Congress dealt only with two kinds of stock dividends, i. e., (1) a " true stock dividend made lawfully and in good faith ", *Eisner* v. *Macomber, supra,* and (2) a stock dividend not made lawfully or in good faith, or one made to circumvent taxation. However, Congress did not even provide that a *stock dividend* not made lawfully and in good faith should be subject to tax. It provided that if after the issuance of a stock dividend the corporation proceeds to cancel or redeem its stock at such time and in such manner as to make the issuance of such stock and the cancellation or redemption thereof essentially equivalent to the payment of a taxable dividend, *the amount received in redemption or cancellation of the stock* shall be treated as a taxable dividend to the extent of the earnings or profits accumulated after February 28, 1913. It is the *amount* subsequently paid by the corporation in cancellation or redemption of such stock dividend not made in good faith that is taxable to the stockholder when received. Hence, when Congress provided that a " stock dividend shall not be subject to tax ", it meant every stock dividend of whatever type or class.

Since it was held in *Eisner* v. *Macomber, supra,* that Congress had no power under the Constitution to tax a dividend in common stock issued to holders of common stock, it was not necessary for Congress to legislate to exempt such common stock dividend from tax. Such legislation would have been futile. Congress had a reason for enacting the provision that a " stock dividend shall not be subject to tax." Cf. *National Bank of the Republic of Chicago,* 31 B. T. A. 680. This provision accomplishes the purpose of removing any question about the taxability of stock dividends other than common stock on common stock. This is not contrary to *Eisner* v. *Macomber, supra.* It is in keeping with it.

As disclosed by T. D. 3059, *supra,* and subsequent regulations, officers charged with the administration of the revenue acts have

---

[8] Sec. 2 (a), 1916 Act; sec. 201 (a) (c), 1918 Act.

repeatedly ruled that *a stock dividend " in whole or in part of a character and preference materially different from the stock upon which the stock dividend is paid "* (emphasis supplied) is *not taxable* income to the stockholder receiving the same.

The substantial reenactment in later acts of provisions theretofore construed by administrative officers is persuasive evidence of legislative approval of the administrative interpretation.[9]

If it were the intention of Congress that the provision of the Revenue Act of 1921 and subsequent acts that a " stock dividend shall not be subject to tax " should apply only to stock dividends issued in common shares upon common shares and the meaning of the term " stock dividend " should be so limited, then such provision, viewed from the standpoint of the facts of the instant proceedings, would be unconstitutional because contrary to Article I, section 2, clause 3, and Article I, section 9, clause 4, of the Federal Constitution, requiring that direct taxes shall be apportioned according to population, and also because contrary to the Sixteenth Amendment, since the stock dividend issued in preferred stock to holders of common stock out of surplus, when other preferred stock is outstanding, represents a portion of the *capital* interest of the holders of common stock or a portion of the " enrichment through increase in value of *capital* investment ", which " is not *income* in any proper meaning of the term " as hereinafter more fully pointed out. (Emphasis supplied.) *Eisner* v. *Macomber, supra.* To the same effect are *Towne* v. *Eisner, supra,* and *Gibbons* v. *Mahon, supra.* It is elementary that if it can be done legislation must be construed so as to bring it within the Constitution rather than in conflict with the Constitution. The construction put upon the applicable section of the act by the majority is contrary to the applicable provisions of the Constitution.

If we assume for the purpose of discussion that Congress has power under the Constitution to tax a stock dividend such as we have here there is nothing in the Constitution to make it mandatory upon Congress to do so; Congress has not done so; on the contrary, Congress has expressly exempted such dividend from income tax.

In truth and logic, looking to substance and not to form, and disregarding mere bookkeeping entries, or lack of them or their mechanics, as is done in this dissent, all of the reasoning of the Supreme Court in *Eisner* v. *Macomber, supra,* in holding that a common stock dividend on common stock is not income or otherwise taxable, applies with equal force to the preferred stock dividend on common stock with other preferred stock outstanding, in question in

---

[9] *Zellerbach Paper Co.* v. *Helvering,* 293 U. S. 172; *Helvering* v. *Bliss,* 293 U. S. 144; *Brewster* v. *Gage,* 280 U. S. 327; *National Lead Co.* v. *United States,* 252 U. S. 140.

these proceedings, and requires a similar result, and is in part set forth in the margin.[10]

The Hamilton Manufacturing Co. on June 29, 1929, declared a stock dividend on common stock to the extent of $14 per share payable in its unissued preferred stock of the par value of $100 per share; and it paid the same by issuing such stock on July 1, 1929. This required no distribution of corporate money or other property, but only book-keeping entries showing the transfer of $261,531.20 (18,680.8 × $14) from surplus to preferred stock liability, both on the liability side of the balance sheet, so that the preferred stock liability would be $977,-031.20 with 9,770.312 shares outstanding instead of $715,500 with 7,155 shares outstanding, and the surplus of $444,147.05, after deducting also the July 1, 1929, quarterly preferred stock cash dividend and common stock cash dividend, together totaling $59,221.25, would be reduced to $123,394.60.[11]

---

[10] * * * This [" declaring a 'stock dividend'"], however, is no more than a book adjustment, in essence not a dividend but rather the opposite; no part of the assets of the company is separated from the common fund, nothing distributed except paper certificates that evidence an antecedent increase in the value of the stockholder's capital interest resulting from an accumulation of profits by the company, but profits so far absorbed in the business as to render it impracticable to separate them for withdrawal and distribution. In order to make the adjustment, a charge is made against surplus account with corresponding credit to capital stock account, equal to the proposed "dividend"; the new stock is issued against this and the certificate delivered to the existing stockholders in proportion to their previous holdings. This, however, is merely book-keeping that does not affect the aggregate assets of the corporation or its outstanding liabilities; it affects only the form, not the essence, of the "liability" acknowledged by the corporation to its own shareholders, and this through a readjustment of accounts on one side of the balance sheet only, increasing "capital stock" at the expense of "surplus"; it does not alter the preexisting proportionate interest of any stockholder or increase the intrinsic value of his holding or of the aggregate holdings of the other stockholders as they stood before. The new certificates simply increase the number of shares, with consequent dilution of the value of each share.

A "stock dividend" shows that the company's accumulated profits have been capitalized, instead of distributed to the stockholders or retained as surplus available for distribution in money or in kind should opportunity offer. Far from being a realization of profits of the stockholder, it tends rather to postpone such realization, in that the fund represented by the new stock has been transferred from surplus to capital, and no longer is available for actual distribution.

The essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit; on the contrary, every dollar of his original investment, together with whatever accretions and accumulations have resulted from employment of his money and that of the other stockholders in the business of the company, still remains the property of the company, and subject to business risks which may result in wiping out the entire investment. Having regard to the very truth of the matter, to substance and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment.

We are clear that not only does a stock dividend really take nothing from the property of the corporation and add nothing to that of the shareholder, but that the antecedent accumulation of profits evidenced thereby, while indicating that the shareholder is the richer because of an increase of his capital at the same time shows he has not realized or received any income in the transaction.

[11] These figures are taken from the record. See illustrative balance sheet and discussion thereof in dissenting opinion in *James H. Torrens,* 31 B. T. A. 787, 799, 801.

It is elementary that the *capital* interest of holders of *common* stock embraces not only the *amount invested*, but also the *surplus*, after all other liabilities, including preferred stock dividends, are provided for. If the dividends payable to holders of preferred stock are paid in cash as they accrue out of surplus available for dividends, as was done in the instant proceedings, then all of the remaining surplus profits constitute *capital* interest of holders of *common* stock only. Hence, when petitioners received the preferred stock as dividends, the outstanding preferred stock having received the dividend to which it was entitled, they merely received the evidence, in the form of preferred stock certificates, of their proportionate share in the surplus to the extent of such dividend. They received nothing in addition to what they theretofore had except such paper.

No money or other property out of corporate earnings or profits accumulated after February 28, 1913, was distributed by the corporation and it merely capitalized a part of its surplus profits on its books of account. Nothing was taken from the holders of preferred stock. Their capital interest to the extent of the par value of their shares was represented by assets of the corporation and they had no other interest, either capital or income, in the surplus, since they also received their quarterly dividend to which they were entitled on July 1, 1929, when the preferred stock was issued as a dividend on common stock.

These proceedings are distinguishable from *Tillotson Manufacturing Co.*, 27 B. T. A. 913, affirmed in *Tillotson Manufacturing Co.* v. *Commissioner*, 76 Fed. (2d) 189, relied upon by the majority.[12]

There is no adequate support in the record in *James H. Torrens*, 31 B. T. A. 787, also relied upon in the majority opinion, or in these proceedings, for the view that in the *Tillotson* case a dividend was declared " under substantially similar circumstances." The majority opinion there and here states, in effect, that a converse situation is presented as compared to that in the *Tillotson* case. This is tantamount to saying that the factual situation in the *Tillotson* case, as compared with the factual situation there and here, is different. No true stock dividend such as we have here is involved in the *Tillotson* case. Since the factual situations are thus different, it follows that the *Tillotson* case is distinguishable from the instant proceedings and the *Torrens* case upon the facts and in principle.

Furthermore, in the *Tillotson* case the court stated that " Two tests were thus established for distinguishing a taxable from a non-taxable dividend in stock: (1) Severance of assets from the corporation, and

---

[12] The facts of the *Tillotson* case and the numerous grounds of distinction likewise applicable here are pointed out fully in the dissenting opinion in *James H. Torrens*, 31 B. T. A. 787, 799.

(2) alteration of the preexisting proportionate interest of the stockholders ", and that there the first test, but not the second, was met. As appears from the discussion herein, in the instant proceedings both tests are met.

What is said in the *Tillotson* case, by the Circuit Court of Appeals and the Board, should be read in the light of its peculiar facts and should not be applied to a factual situation such as we have in the instant proceedings, which is so different, and the doctrine of the *Tillotson* case should not be carried beyond the requirements of the peculiar facts of that case.

The issuance of the preferred stock dividend in question here had no effect upon the rights of the preferred stock outstanding. It is elementary that ordinarily the *capital* interest of holders of preferred stock is limited to its par value, and that they have no *capital* interest in the surplus profits; that their interest in the surplus profits is limited to the fixed rate of dividend; that such interest is an *income* interest as distinguished from a *capital* interest; and that even a premium paid to holders of preferred stock upon redemption of such is not a *capital* interest, but constitutes *income* and is taxable as such. Had the corporation, out of surplus, paid money or other property instead of stock, the assets of the corporation to that extent would have been depleted, but the holders of the preferred stock outstanding coud not have rightfully complained. Here the surplus was not distributed in money or other property, out of corporate earnings or profits accumulated after February 28, 1913, but was retained by the corporation. The asset side of the balance sheet was not affected. In fact, the corporation could have distributed the entire surplus to common stockholders in money or other property and the preferred stockholders would have had no right to complain. Even in that event the corporation would still have had assets equivalent to the par value of their stock, and, in addition, assets equal to the value of the amount invested by holders of common stock, which upon dissolution or liquidation is ordinarily subject to the rights of creditors and the preference of preferred stock. The owners of preferred stock previously outstanding were chargeable with knowledge that there was authorized unissued preferred stock which could be sold or issued as a dividend on common stock, as was done here. This must all be viewed in the light of the conditions that existed, in this respect, at the time of the declaration and payment of the stock dividend in question, and not in the light of any imaginary anticipated future changed condition. This question here can not be rightfully tested by different, assumed conditions as of some other time.

None of the Board cases which involve preferred stock dividends,[6] except the *Torrens* case, are decided upon the *absence* or *existence* of previous outstanding preferred stock. As appears from the discussions herein, both are immaterial. There is nothing in the Constitution, revenue acts, regulations, rulings, or previous court or Board decisions which intimates that if there is preferred stock outstanding at the time of the issuance of a preferred stock dividend such dividend is not a tax-free stock dividend; and all these require a result contrary to that reached by the majority here and in the *Torrens* case. The *Torrens* case should be overruled.[13]

It is elementary that fluctuations in value do not give rise to taxable income or deductible losses or constitute additional property rights by virtue of an increase in value; the measure of the value as reflected by the market may change, but the rights to all of the property remain the same whatever its value may be intrinsically or otherwise. The majority opinion does not mention a single thing *in esse*, in being, or of any actual value which the petitioners received from or which was distributed to them by the corporation on July 1, 1929, except the paper upon which the certificates were written. In some respects the majority opinion, in effect, holds taxable a thing *in posse*, that which is not but may be, something dependent upon conditions which can not be foreseen and wholly beyond the control of the corporation or its stockholders. The possibility that the petitioners may or may not receive a greater profit on the preferred stock than they would had they not received it is treated by the majority as " additional property rights which might well afford them a different and greater market with an increased money return." In *Eisner* v. *Macomber, supra,* however, the Court stated that " we regard the market price of the securities as an unsafe criterion and in an inquiry such as the present, *when the question must be,* not what will the *thing sell for, but what is it in truth and in essence.*" (Emphasis supplied.) By the receipt of the preferred stock dividend, the petitioners did not receive *in praesenti* anything in money or in other property, " out of its [corporation's] earnings or profits accumulated after February 28, 1913 ", as required by section 115 (a) of the 1928 Act, or any " of the company's assets for his [their] separate use and benefit ", *Eisner* v. *Macomber, supra,* or any " assets of exchangeable and actual value severed from their capital interest " in the company, *United States* v. *Phellis,* 257 U. S. 156, or " a thing really different from what he [they] theretofore had ", *Weiss* v. *Stearn,* 265 U. S. 242; and by a parity of reasoning the petitioners did not even receive any present " rights to the assets " of the com-

---

[6] See p. 825.
[13] See dissenting opinion in *James H. Torrens,* 31 B. T. A. 787.

pany. Their right to future dividends is subject to declaration by the directors and their right to preference as to assets to the extent of the par value of their stock and unpaid dividends, if any, can arise only at the time of liquidation.

The preferred stock received by the petitioners in the instant proceedings is a tax-free true stock dividend.

## II.

Hence the value of that stock on July 1, 1929, is immaterial.

Furthermore, in reconsidering the memorandum opinion entered herein on June 29, 1933, the Board is considering a new issue raised for the first time by respondent's motions filed July 18, 1933. The only issue raised by the pleadings in these proceedings is whether the preferred stock dividend distributed to the petitioners on July 1, 1929, was later redeemed or canceled by the corporation on October 1, 1929, in such a manner as to make the redemption or cancellation thereof equivalent to the distribution of a taxable dividend within the purview of section 115 (g) of the Revenue Act of 1928. Counsel for respondent so stated at the first hearing. The facts were there stipulated in part and such stipulation treats the dividend of July 1, 1929, as a " stock dividend." Hence the issue there presented did not comprehend the nature and character of the *dividend distributed on July 1, 1929,* but it involved only the nature and character of the *payment made on October 29, 1929,* by the company to the petitioners upon return to the company of the stock dividend distributed on July 1, 1929. This is admitted by counsel for respondent in his argument in support of his motions filed July 18, 1933, wherein he states:

A stipulation filed with the Board refers to the dividend as a " stock dividend," and it was on this theory that the deficiencies were determined and the cases presented to the Board.

Hence no question was raised by the parties as to the taxability of the stock dividend of July 1, 1929, until the respondent raised the question in the above motions. It was never raised except by motion and after the proceedings had been disposed of by the decision of June 29, 1933.

The respondent has not indicated that the memorandum opinion filed June 29, 1933, is incorrect in its statement of the issue raised by the pleadings and facts presented. On the contrary, in his brief in support of his motion for consideration and judgment filed July 18, 1933, he stated that " the respondent was not complaining of the Division's decision on the theory on which it was presented and decided but was asking for reconsideration on a new theory " and that the " respondent is content with the findings of fact made by the

Board in its previous memorandum Opinion * * *" filed June 29, 1933, except that under his new theory of the proceedings he, for the first time, with his motions, requested a finding as to the value of the preferred stock as of July 1, 1929, without any proof in the record to base such finding upon.

The question whether the stock dividend issued on July 1, 1929, was a tax-free stock dividend constitutes not a "theory", but an issue not raised by the pleadings; and such issue is a wholly different issue, governed by a wholly different statutory provision, section 115 (f) of the 1928 Act and not by section 115 (g) of the 1928 Act. These statutory provisions deal with wholly different causes. As this new issue and cause was not raised in the petition, the duty rested upon the respondent to plead it in his original answer or by amendment thereof under Rule 14 of the Board, which provides that the " answer shall be so drawn as *fully and completely* to advise the petitioner and the Board of the nature of the defense " and " shall contain * * * a statement of any facts upon which the Commissioner relies for defense or affirmative relief." While the question of the correctness of the deficiency is inherent in every proceeding before the Board, the Board, in determining the correctness of the deficiency, will consider only issues raised and causes pleaded. *James P. Gossett*, 22 B. T. A. 1279; *John I. Chipley*, 25 B. T. A. 1103; and *Claude D. Cass*, 32 B. T. A. 713. No amendment to the pleadings was filed and the Board erred in ordering further hearing upon an issue and cause not raised by the pleadings. *Coosa Land Co.*, 29 B. T. A. 389, 394; and *North American Coal Corporation*, 28 B. T. A. 807, 831. These cases, relied upon by majority, do not hold that the Board, in determining the correctness of the deficiency, may consider issues or causes other than those raised by the pleadings. Furthermore, as heretofore indicated, all the facts necessary to sustain the respondent's new issue and cause in the instant proceedings were not adduced in evidence at the original hearing and it was necessary to hold a further hearing, after the proceeding had been heard and determined and its memorandum opinion entered, to ascertain the fair market value of the preferred stock as of July 1, 1929.

The rule of the Board requiring the respondent, in his answer, to fully and completely advise the petitioner and the Board of the nature of his defense should not be permitted to be set at naught by designating an issue or a cause as a theory.

Assuming, for the purpose of discussion, that the issue and cause, under section 115 (f) of the 1928 Act, suggested for the first time by respondent's motions, constitutes a mere theory and not an issue or cause, neither the Board nor any Division could rightfully

reconsider the memorandum opinion of June 29, 1933, or order the taking of further testimony without a showing on the part of respondent of newly discovered evidence or some other good cause therefor, which is lacking here. *Fifth Avenue Bank of New York, Executor*, 32 B. T. A. 208; *Pierce Oil Corporation*, 30 B. T. A. 470; and *Fifth Street Building* v. *Commissioner*, 77 Fed. (2d) 605, affirming 24 B. T. A. 876.

No motion to amend the pleadings or reopen the proceedings to permit the taking of further proof was ever made by the respondent. See *Pierce Oil Co., supra.*[14]

In the instant proceedings, the hearing was concluded, briefs were filed, and an opinion completely disposing of the proceedings was rendered. All of respondent's motions as made should have been denied.

## III.

In view of the conclusions heretofore set forth, it is unnecessary to further discuss, directly or indirectly, whether (upon the whole record, under the provisions of the revenue acts,[15] construed in the light of the reports of the committees of Congress [16]), (1) after the memorandum opinion had been entered on June 29, 1933, and after respondent's motion, filed July 18, 1933, for review by the Board upon the ground only that such memorandum opinion is contrary to *Tillotson Manufacturing Co.*, 27 B. T. A. 913, was denied by order entered July 24, 1933, and after respondent's motions filed July 18, 1933, for reconsideration of such memorandum opinion and judgment for the respondent, upon the same ground, were denied after hearing thereon by the order entered January 15, 1934, with an accompanying " Memorandum ",[17] not a " memorandum opinion ", the order of

---

[14] The Board there stated:

" While Rule 17 does not define the *' conclusion of the hearing'*, it can not be said to *extend beyond the time when the trial has been concluded and the briefs filed*. This we believe is a reasonable rule and fairness and orderly procedure require that it be adhered to in a case such as this. To disregard the rule under such circumstances would be an invitation to litigants to try their cases piecemeal and unreasonably extend the proceedings. Moreover, the petitioners here do not bring themselves within the rule, for the motion before us does not propose to ' amend the pleadings to conform to the proof ', but seeks to reopen the case to amend the pleadings, and to offer proof in support of such amendment. * * *

" While the Board has not adopted a rule governing rehearing, its policy in respect thereto is that a rehearing is extraordinary, and *will only be granted on good cause shown*. * * *" [Emphasis supplied.]

[15] Sec. 900, 1924 Act; secs. 1000 and 1005, 1926 Act; secs. 601 and 272 (e), (h), 1928 Act.

[16] Rept. No. 2, Committee on Ways and Means, 70th Cong., 1st sess.; Rept. No. 960, Committee on Finance, 70th Cong., 1st sess.

[17] This " Memorandum " distinguishes the *Tillotson* case (27 B. T. A. 913) with less elaboration.

January 31, 1934, should have been entered directing review by the Board of the " Order with the accompanying memorandum ", dated January 15, 1934, upon another motion of respondent, based upon the same ground only, filed January 26, 1934, (a) that the Chairman of the Board direct that the " Memorandum Opinion entered by a Division of the Board on January 14, 1934 " be reviewed by the Board, and (b) that if the decision of the Division had become the decision of the Board that the Board review its own decision; (2) whether the Board, upon such motion of respondent or upon its own initiative, should have reconsidered the memorandum opinion entered June 29, 1933; (3) whether the Board should have directed another Division of the Board to enter the order dated November 20, 1934, vacating the order entered January 15, 1934, and granting respondent's motion filed January 26, 1934, for reconsideration of the memorandum opinion entered June 29, 1933; (4) whether such other Division should have entered the order dated November 24, 1934, placing these proceedings on the Chicago calendar for hearing evidence upon the subject of the fair market value of the preferred stock of the Hamilton Manufacturing Co., as of July 1, 1929; (5) whether another different Division should have heard such further evidence thereon February 13, 1935; (6) whether the memorandum opinion entered June 29, 1933, has become final so that the time for appeal by respondent has expired; or (7) any other phases of the proceedings.

### *Conclusion.*

In any event, the order of the Chairman dated January 31, 1934, and the orders of November 20 and November 24, 1934, should be vacated and set aside; both motions of respondent filed January 26, 1934, should be denied; the memorandum opinion entered herein on June 29, 1933, as well as the order of the Chairman dated July 24, 1933, and the order dated January 15, 1934, together with its accompanying memorandum, should be permitted to stand; and a decision should be entered in accordance with the memorandum opinion entered herein on June 29, 1933.

Since I presided at the first hearing in these proceedings and at the hearing on two of the three motions of respondent as filed July 18, 1933, and denied the same by the order of January 15, 1934; and, since I made the decision embodied in the memorandum opinion entered June 29, 1933, and dissented from the order entered November 20, 1934, and now dissent from the order of November 24, 1934, as well as from this opinion of the majority, I am constrained to respectfully set forth my views.