AUGUST HORRMANN, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 77141, 77142, 77143, 77144, 77145, 77200.
Promulgated October 21, 1936.

---

[1] On motion of counsel for petitioners proceedings of the following petitioners were consolidated with the above entitled case: Paula Uhl; Frances Horrmann; Ellen Horrmann; William C. Horrmann, Jr.; and Minnie Badenhausen.

*Edgar J. Goodrich*, *Esq.*, and *Eugene Untermyer*, *Esq.*, for the petitioners in Docket Nos. 77141–77145.

*Theodore B. Benson*, *Esq.*, for the petitioner in Docket No. 77200.

*Hartford Allen*, *Esq.*, and *Walter W. Kerr*, *Esq.*, for the respondent.

1180

## OPINION.

Arundell: The respondent has treated the $240,000 cash distribution by the brewing company in 1930 as a distribution out of the corporate earnings or profits accumulated after February 28, 1913, hence, taxable as a dividend under section 115 of the Revenue Act of 1928.[1] The petitioners claim that the post-1913 earnings were exhausted before the 1930 distribution. Consequently, that distribution was from earnings prior to March 1, 1913, and was not taxable.

Between February 28, 1913, and the time of the increase in capitalization in 1922 the company accumulated earnings in the amount of $510,577.67. This sum, the petitioners say, was exhausted by the issuance of the $400,000 preferred stock in 1922, plus subsequent losses. In 1927 when the preferred stock was redeemed, the accumulated post-1913 earnings were $373,931.03. This sum, it is contended, was exhausted by the redemption of the preferred stock in 1927 for

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) *Definition of dividend.*—The term "dividend" when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

$400,000. If either of these propositions be sound, there was no post-1913 accumulation of earnings available for dividends in 1930 and the distribution in that year is tax-free. We are of the opinion that the first proposition can not be sustained and that the second one is right only in part.

Much of the argument here is addressed to the matter of the nature of dividends paid in stock and their effect on corporate earnings and surplus. A dividend in cash, of course, operates to diminish earnings and profits. A stock dividend of the type dealt with in *Eisner* v. *Macomber*, 252 U. S. 189, does not. *Hugh R. Wilson*, 3 B. T. A. 957; *J. T. Hedrick*, 24 B. T. A. 444; *Edward D. Untermyer*, 24 B. T. A. 906; *J. W. McCulloch*, 29 B. T. A. 67; *H. Y. McCord*, 31 B. T. A. 342; *Walker* v. *Hopkins*, 12 Fed. (2d) 262. The dividend in the *Eisner* v. *Macomber* case, *supra*, was in common stock on stock of the same kind; here, it is in preferred stock on common stock, which was the only class outstanding. We held in *Pearl B. Brown, Executrix*, 26 B. T. A. 901; affd., 69 Fed. (2d) 602, that a dividend like the present one, namely, in preferred stock on common, where only common was outstanding, was a pure stock dividend "constitutionally free from tax", following *Eisner* v. *Macomber*, *supra*. We said that its effect was "a mere proliferation of existing interests." Further:

At the moment of change, each shareholder's proportionate rights were absolutely and relatively the same, except that each in the same ratio had preferred as well as common shares, a difference without significance here. These are the essential characteristics of a stock dividend—those which have always given point to the cases in which the question has arisen. *Gibbons* v. *Mahon*, 136 U. S. 549; *Towne* v. *Eisner*, 245 U. S. 418; *Eisner* v. *Macomber*, 252 U. S. 189; *La Belle Iron Works* v. *United States*, 256 U. S. 377; see also *Graves* v. *Graves*, 120 Atl. 420; *Kaufman* v. *Charlottesville Co.*, 23 S. E. 1003; *United States* v. *Siegel*, 52 Fed. (2d) 63.

To the same effect are *Alfred A. Laun*, 26 B. T. A. 764; *Frances Elliott Clark*, 28 B. T. A. 1225; affd., 77 Fed. (2d) .89; and *H. C. Gowran*, 32 B. T. A. 820. In the last cited proceeding we summarized the holding of the several cases as follows:

In all those cases, no preferred stock was outstanding when the preferred in question was distributed as a dividend on or in partial exchange for common stock. Thus, since (1) there was no severance of assets from the declarant corporations, and (2) there was no alteration of the preexisting proportionate interest of the stockholders, but "only a proliferation of preexisting interests" (*Pearl B. Brown, Executrix*, *supra*), the disputed dividend was held nontaxable.

We do not believe that the recent case of *Koshland* v. *Helvering*, 297 U. S. 702, requires a different conclusion. The facts there were different in that both common and preferred stock were outstanding when a dividend on the preferred was paid in common stock. There is, as pointed out in the *Koshland* decision, a distinction between

cases like the *Macomber* case and those where "the proportional interests of the stockholder after the distribution was essentially different from his former interest. * * * Where a stock dividend gives the stockholder an interest different from that which his former stock holdings represented, he receives income." The quoted words state the theory upon which the Board and the Circuit Court of Appeals proceeded in *Tillotson Manufacturing Co.*, 27 B. T. A. 913; affd., 76 Fed. (2d) 189. In that case there were both common and preferred stock outstanding when the dividend on the preferred was paid in common stock.

But whether we are right or wrong in our interpretation of the *Koshland* case and whether or not the preferred stock dividend of 1922 was income, we are of the opinion that it was not taxable to the stockholders. Of course, if it was a stock dividend within the compass of *Eisner* v. *Macomber*, it was not income under the Sixteenth Amendment; if it was income as in the *Koshland* case, it was nevertheless a stock dividend which was specifically exempt from tax under section 201(d) of the Revenue Act of 1921.[2]

This exemption has been of long standing as pointed out in the opinion in the *Koshland* case. All of the revenue acts from 1921 to 1934, inclusive, have specifically provided for the exemption and the Treasury regulations over an equally long period of time have broadly held stock dividends nontaxable.

The next question under this branch of the case is whether the preferred stock dividend effected a "distribution of earnings or profits" within the meaning of the statute. It is obvious that dividends in cash (*Lynch* v. *Hornby*, 247 U. S. 339) or in property of the corporation (*Peabody* v. *Eisner*, 247 U. S. 347) reduce the corporate assets and are in fact distributions. But the possible effect upon the corporate earnings of the several different kinds of stock dividends is not so clear and the matter has not been, as far as we know, squarely decided in any of the cases. It is our view that a stock dividend is a statutory "distribution of earnings or profits" only when it is of a kind that is taxable to the stockholder. The provisions of the statute relating to distribution are concerned with the effect on the stockholder of the distribution and not with its effect on the corporation. The aim is to tax to the stockholder the income realized by him through the distribution of earnings or profits accumulated after March 1, 1913. This aim would be defeated if a nontaxable stock dividend were treated as diminishing the amount of earnings and profits available for subsequent distribution. Conversely, if a stock dividend were taxable and corporate earnings were not thereby diminished, the imposition of the tax on a subsequent distribution in cash or property would result in a

---

[2] Sec. 201. (d) A stock dividend shall not be subject to tax * * *.

double tax. A correlation between taxability to the stockholder and the effect on corporate earnings or profits avoids these situations. It does no violence to the statute, but rather harmonizes its provisions; in fact, it accords with what we believe was the intent of the statute as clarified by subsequent enactments hereinafter discussed. It also accords with the construction that has been given to the somewhat analogous question of the effect of stock issued in connection with a reorganization. In *Commissioner* v. *Sansome*, 60 Fed. (2d) 931, the court, speaking of the Revenue Act of 1921, said that "Section 202 (c) (2) [recognition of gain or loss on an exchange] should be read as a gloss upon Section 201 [dividends]." The court held that an amount not recognized as gain under the exchange provisions should not be recognized as "changing accumulated profits into capital." In the latter case of *Harter* v. *Helvering*, 79 Fed. (2d) 12, involving a reorganization, the same court held:

> When the Philadelphia Paper Manufacturing Company and the Fibre Container Company merged on June 30, 1923, no gain was "recognized" to the shareholders for it was a "reorganization" under Sec. 202 (c) (2) of the Revenue Act of 1921, and Sec. 203 (b) (2) of the Act of 1926. *A consequence of this* is that for the purposes of allocating dividends under Sec. 201 (b) of the Act of 1926, against earnings before and after March 1, 1913, the surplus is regarded as unchanged. [Italics ours.]

The *Harter* case arose under the Revenue Act of 1926, as did *Murcheson's Estate* v. *Commissioner* (C. C. A., 5th Cir.), 76 Fed. (2d) 641, in which the same result was reached. To the same effect are *United States* v. *Kaufman* (C. C. A., 9th Cir.), 62 Fed. (2d) 1045; *George F. Baker, Jr., Executor*, 28 B. T. A. 704; affd., 80 Fed. (2d) 813; *Helen V. Crocker*, 29 B. T. A. 773.

Any doubt as to the correctness of the holding in the above cases was removed in the Revenue Act of 1934 where by section 115 (h) it was provided that a distribution of stock or securities in a reorganization "shall not be considered a distribution of earnings or profits * * * for the purpose of determining the taxability of subsequent distributions * * *." The same rule is more broadly stated in the Revenue Act of 1936 (sec. 115 (h))[3] with the explanation by the Senate Finance Committee that the section makes no change in the

---

[3] SEC. 115. (h) EFFECT ON EARNINGS AND PROFITS OF DISTRIBUTIONS OF STOCK.—The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities or stock or securities in another corporation shall not be considered a distribution of earnings or profits of any corporation—

(1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, or

(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115(f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act. * * *

rule as applied under existing law.[4] This enactment and the explanation thereof confirm our view expressed above that the intent of the taxing law is to produce correlation between the taxability of dividends to the stockholder and the effect of dividends on corporate earnings or profits. As we have held above that the 1922 stock dividend was not taxable to the stockholders of the brewing company, it follows that that dividend did not operate to diminish earnings for the purpose of determining the taxability of subsequent distributions.

The alternative claim is that the redemption of the preferred stock in 1927 for $400,000 was "essentially equivalent to a taxable dividend" under section 201 (g) of the Revenue Act of 1926,[5] and that no part of the funds used for redemption was properly chargeable to capital account under section 201 (c).[6] If the redemption was essentially equivalent to a taxable dividend it would more than exhaust the earnings or profits accumulated after March 1, 1913. We find no evidence here to establish that the redemption was essentially equivalent to a taxable dividend. In the recent case of *Commissioner v. Rockwood,* 82 Fed. (2d) 359, it is pointed out that normally the redemption of stock is a return of capital and that a normal situation should be held to exist "unless there is a series of acts, which bring to a court or administrative officer the conclusion that the taxpayer has intentionally planned such series of independent acts with the purpose, through such continuity, of bringing about evasion of the law." See *Pearl B. Brown, supra,* in which it was said:

\* \* \* The statute does not provide that every cash redemption of shares shall be treated *per se* as a dividend, but only those which because of some

---

[4] The rule, under existing law, with respect to the effect on corporate earnings or profits of a distribution which, under the applicable tax law, is a nontaxable stock dividend or a distribution of stock or securities in connection with a reorganization or other exchange, on which gain is not recognized in full, is that such earnings or profits are not diminished by such distribution. In such cases, earnings or profits remain intact and hence available for distribution as dividends by the corporation making such distribution, or by another corporation to which the earnings or profits are transferred upon such reorganization or other exchange. This rule is stated only in part in section 115 (h) of the Revenue Act of 1934, and corresponding provisions of prior acts, but is the rule which is applied by the Treasury and supported by the Courts in *Commissioner v. Sansome,* 60 Fed. (2) 931; *U. S. v. Kauffmann,* 62 Fed. (2) 1045; *Murcheson v. Comm.,* 76 Fed. (2) 641. While making no change in the rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity. [Rept. No. 2156, p. 19.]

[5] SEC. 201. (g) If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings of profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subdivision shall apply only if the cancellation or redemption is made after January 1, 1926.

[6] SEC. 201. (c) \* \* \* In the case of amounts distributed in partial *liquidation* (other than a distribution within the provisions of subdivision (g) of section 203 of stock or securities in connection with a reorganization) the part of such distribution *which is properly chargeable to capital account* shall not be considered a distribution of earnings or profits within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation. [Italics supplied.]

circumstance of time and manner are in fact the essential equivalent of a dividend. * * *

See also *Henry B. Babson,* 27 B. T. A. 859; affd., 70 Fed. (2d) 304; *Louis Rorimer,* 27 B. T. A. 871; *Annie Watts Hill,* 27 B. T. A. 73; affd., 66 Fed. (2d) 45. The petitioners here do not point out any circumstance of time or manner and we find none in the record which brings the case within the statute as interpreted by the above decisions. We accordingly hold that the redemption in 1927 was not essentially equivalent to a taxable dividend.

Holding as we do, that the petitioners have not established their claim that the 1927 redemption was essentially equivalent to the distribution of a taxable dividend, there is no occasion to consider respondent's argument that petitioners are estopped to so claim.

Since we hold the $400,000 distribution in 1927 to be a distribution in partial liquidation, it becomes necessary under the statute to determine what part of the liquidation is "properly chargeable against capital account" within the meaning of section 201 (c), the remainder being chargeable against earnings and profits. As an accounting matter the whole would be chargeable against capital because as a matter of accounting the capital account would have been increased to cover the new stock when issued. However, we think the "capital account" referred to by the statute is not increased by the issuance of a nontaxable stock dividend, but comprises only the paid-in capital. Therefore, it would be improper to charge the whole redemption against capital account; such procedure here would wipe out the entire capital account, leaving no capital to represent the common stock still outstanding. The petitioner argues that the whole redemption is properly chargeable against surplus in that the issuance of the stock served only to earmark a part of the surplus. This seems to us equally improper. We are unwilling to disregard the interest which shares of stock represent in the assets of the corporation and to say that they serve only to earmark a portion of surplus. Also, we are unwilling to attempt to earmark shares of stock and say that the redemption of the original shares is entirely chargeable against capital account (to the extent of the amount originally paid in) while the redemption of dividend shares is chargeable in no part against capital. We think that a proportional part of the paid-in capital must be considered as standing behind each of the shares outstanding at any particular time, so that on redemption of any of them a certain part of the redemption is properly chargeable against capital account. Since the capital structure as distinguished from the statutory "capital account" was increased to $1,000,000 by the issuance of new stock of the par value of $600,000 in 1922, while the paid-in capital (the statutory capital account) remained at $400,000, we think that the 1927 redemption should be chargeable against

capital account in the ratio of $400,000 to $1,000,000. The reduction of the common stock to a nominal par value before 1927 and the corresponding creation of paid-in surplus was a mere bookkeeping entry and did not alter the capital structure, which includes both capital stock and paid-in surplus accounts. Using the ratio indicated above, $160,000 of the 1927 redemption is chargeable against capital account and $240,000 is chargeable against post-1913 earnings. Applying this method of calculation, the taxable portion of the 1930 distribution will be found by subtracting from the post-1913 earnings the $240,000 of the 1927 redemption chargeable thereto and the losses sustained between the 1927 redemption and February 8, 1930.

Counsel for the petitioners cite *Harter* v. *Helvering, supra*, as authority on the point last discussed. We do not regard that case as decisive of the point at issue here. While in that case the court said that the redemption of stock "must be marshaled first against the earnings after February 28, 1913", it does not appear that the question of allocating a part of the redemption price against capital was presented to or considered by the court. The issue, as stated by the court, was whether the distribution in redemption was out of earnings before or after March 1, 1913.

The final issue is whether the $85,960 received by the two trusts for the benefit of Frances Horrmann and William Horrmann, Jr., respectively, is taxable to the beneficiaries as income "which is to be distributed currently by the fiduciary to the beneficiaries" (sec. 162, Revenue Act of 1928). Whether this amount was currently distributable by the trusts depends on the directions of the will under which they were created, which provided that:

All stock dividends or extraordinary dividends declared by any corporation whose securities at any time form part of my estate are to be treated as capital.

The question is whether the cash distribution here was such an "extraordinary dividend." The considerations controlling this determination are stated in the A. L. I. Restatement of Trusts, comments on section 226:

Whether a dividend is an ordinary or an extraordinary dividend depends upon all the circumstances of the case. Among the circumstances which may be of importance in determining whether a dividend is an ordinary dividend are the following: (1) whether similar dividends have been declared with regularity in the past; (2) whether such dividends are regularly paid out of current earnings; (3) the frequency with which such dividends are declared; (4) the size of the dividend in relation to the market value of the shares at the time of the creation of the trust; (5) the designation, if any, placed upon it by the directors of the corporation; (6) the source of the earnings from which the distribution is made.

When the $240,000 was distributed in 1930 there had never been a comparable dividend in the 17 years of the company's history

of which we have evidence. There had been no dividend at all in six of the preceding eleven years, and no dividends in any of the other five years had ever exceeded $28,000. In 1930 and in four out of the five preceding years, the company operated at a loss. The source of the 1930 distribution was entirely from earnings of the corporation prior to the creation of the trusts in 1927. We are of the opinion that the $240,000 dividend was an "extraordinary dividend", and therefore not distributable under the will. The Surrogate's Court so held in approving the retention of the dividends by the trustees in the case of the Frances Horrmann trust. We hold the distributions to the two trusts are not taxable to the beneficiaries.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

BLACK, STERNHAGEN, TURNER, DISNEY, and HARRON concur only in the result.

---

LEECH, dissenting: I dissent from the result reached in the majority opinion because I think its conclusion on the first point is wrong on both its premises. *Commissioner* v. *Tillotson Manufacturing Co.*, 76 Fed. (2d) 189, affirming 27 B. T. A. 913; *H. C. Gowran*, 32 B. T. A. 820; *James H. Torrens*, 31 B. T. A. 787.

MORRIS agrees with this dissent.